STEPHEN LINDSEY, JR., *et al.*

*v.*

HEZEKIAH LINDSEY.

MENTAL CAPACITY *to make contracts.* On a bill filed by one of several heirs at law to set aside a deed made by his father to one of the other children, upon the ground of mental imbecility of the grantor, and of undue influence, it was *held,* that to entitle the complainant to the relief sought, there being no undue influence shown, he must show such a degree of mental weakness as renders a party incapable of understanding and protecting his own interests. The circumstance that the mental powers have been somewhat impaired by age is not sufficient, if the contracting party still retains a full comprehension of the meaning, design and effect of his acts.

APPEAL from the Circuit Court of Fulton county; the Hon. CHAUNCEY L. HIGBEE, Judge, presiding.

The facts necessary to a full understanding of the issues presented in this case are stated in the opinion.

Mr. J. S. WINTER, for the appellants.

Mr. S. C. JUDD and Mr. L. W. JAMES, for the appellee.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

On the 27th of January, 1862, Stephen Lindsey, Sr., then eighty-seven years old, conveyed to his youngest son, Hezekiah, his farm in Fulton county, containing 270 acres, and executed to him a bill of sale for three horses, two cows, some hogs, and his farming utensils. At the same time the son executed to his father seven notes for $150 each, secured by a mortgage on the farm, and also a bond in the penal sum of $1,000, conditioned for the support of his father during his life. His

father died on the 2d of September, 1864, and a part of the
heirs, brothers and sisters of Hezekiah, have filed this bill to
set aside said deed and bill of sale, on the ground that Stephen
Lindsey, Sr., was, at the time of their execution, mentally
incapable of contracting, and that he had been subjected to
undue influence on the part of Hezekiah. The defendant
answered, denying these allegations in the bill; and the case
having been heard on the bill, answer, replication and proofs,
the circuit court dismissed the bill.

The evidence is quite voluminous, and we cannot undertake
to discuss it in detail. An attentive examination of it, however,
has satisfied us the court did not err in this decree.

There is no proof whatever, that anything was ever said or
done by Hezekiah for the purpose of influencing his father to
enter into this transaction. So far as appears, he was merely
an assenting party, his father having, some eighteen months
before this affair occurred, executed two wills, drawn by the
witness Bailey, with substantially the same purpose in view
that was sought in this transaction, but finally preferring to
give the matter this shape. So far as the case depends upon
the exercise of improper influence, we must regard it as alto-
gether unsustained by proof.

Was there, then, such mental imbecility on the part of the
senior Lindsey as to justify a court in setting aside the deed
on that ground alone? Before a complainant can claim such
a decree, in the absence of undue influence, he must show such
a degree of mental weakness as renders a party incapable of
understanding and protecting his own interests. The circum-
stance that the intellectual powers have been somewhat
impaired by age is not sufficient, if the contracting party still
retains a full comprehension of the meaning, design and effect
of his acts. Story's Eq. Jur., secs. 235 *et seq.* Tried by this
rule, these instruments must stand. As in most cases of this
character, there is a good deal of contradiction in the evidence.
It is a family feud, and as the witnesses were testifying to
their opinions as to the mental capacity of the deceased, we

must expect much contrariety in the testimony. All, how-
ever, that appellants can fairly claim to have established is,
that Stephen Lindsey, Sr., during the latter years of his life,
was subject to occasional attacks of epilepsy, and for several
days after an attack he would be disqualified for business.
But on the other hand, it is conclusively shown by Bailey, his
neighbor and adviser, and by Frisbie, the justice of the peace
who drew the deed, that he was, at the time of this transac-
tion, in the full possession of his faculties, and perfectly
cognizant of the meaning and effect of his acts. Bailey, an
intelligent witness, went with him from his farm to the village
of Vermont, where the papers were executed, and during this
drive, while by themselves, the son not being in the sleigh, he
explained his views and objects in making the deed, and the
witness testifies, "his mind was as clear as I ever knew it to
be." Bailey remained until the transaction was consummated,
and his testimony, and that of Frisbie, the justice, are to the
same effect, and of a very conclusive character. The testimony
of his physician, as to his capacity to transact business when
not under the influence of the epileptic attacks, is equally
positive. It is, however, upon the testimony of Bailey and
Frisbie that we more particularly rely, because the influence
of the epileptic attacks is shown to have been only temporary,
and their evidence proves that, at the time of this transaction,
he was abundantly able to transact business.

There are cases in which, some degree of mental weakness
having been shown, the courts have inferred the exercise of
undue influence from the character of the transaction. In the
case before us no such inference is to be drawn. The defen-
dant had come with his family from Missouri, in 1856, at the
request of his father, to live with him in his old age. He was
the youngest child, and the other children had already been
assisted by him to a greater extent than the defendant had
been, and were in better circumstances. Under these circum-
stances it is not evidence of either mental imbecility or undue
influence that the deceased conveyed this property to his son

6—50TH ILL.

for a fraction of its value, taking from him notes secured by mortgage for such sum as he thought equitable, for the benefit of his other children, and a bond for his own maintenance during the remainder of his life.

The decree must be affirmed.

*Decree affirmed.*