# Edward K. Rogers

## *v.*

# Ebenezer Higgins *et al.*

1. Res adjudicata—*what so considered.* When a complainant in chancery presents his cause of action before the court, he should bring forward and urge all the reasons which then exist for its support. After a determination of the suit, the controversy can not be reopened, to hear an additional reason, which before existed, and was within the knowledge of the party, in support of the same cause of action.

2. The principle of *res adjudicata* embraces not only what has actually been determined in a former case, but also extends to any other matter properly involved, and which might have been raised and determined in it.

3. Rescission of contracts in equity—*mental incapacity of the parties.* Mental imbecility alone will not authorize a court of equity to set aside an executed contract, the mental weakness of the party not amounting to an incapacity to comprehend the contract, and there being no evidence of imposition or undue influence.

4. Solicitation, importunity, argument and persuasion to induce the party to enter into a contract, would not of themselves affect the validity of a deed.

5. False representations—*matters of opinion merely.* The purchaser of a lot of ground, in negotiating for the purchase, the lot being at the time in possession of a third person who claimed title thereto, after informing the vendor that the title was still in her, under the law, represented that it was doubtful about the recovery of the lot: *Held*, such representation was a matter of opinion only—the vendee's disparagement of the property, where the vendor is not presumed to trust to the vendee, but to rely upon his own judgment.

6. Consideration—*adequacy thereof.* And upon the question whether the price paid was grossly inadequate, it was *held*, the adequacy of consideration should be measured, not by the value of the lot, but by its value after deducting the cost of its recovery.

7. Fraud—*waiver thereof.* If a party has knowledge that he has been defrauded, and yet subsequently confirms the original contract by making new agreements and engagements respecting it, he thereby waives the fraud, and abandons his claim to equitable relief. A party defrauded can not be allowed to deal with the subject matter of the contract, and afterwards rescind it.

8. RESCISSION OF CONTRACT—*laches.* Where a party seeks to rescind a contract for fraud, he must ask the aid of the court in a reasonable time.

9. FALSE REPRESENTATIONS—*without injury.* A court of equity will not lend its aid to set aside a contract on the ground of fraud, unless the party seeking relief has been misled to his prejudice or injury. Courts of equity do not, any more than courts of law, sit for the purpose of enforcing moral obligations, or correcting unconscientious acts, which are followed by no loss or damage.

APPEAL from the Superior Court of Chicago; the Hon. JOHN A. JAMESON, Judge, presiding.

Messrs. SPAFFORD, MCDAID & WILSON, for the appellant.

Messrs. HIGGINS, SWETT & QUIGG, for the appellees.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

On the 21st day of May, 1845, one Ann Wight, a married woman residing in the State of New York, through her agents, Ogden & Jones, made a contract in writing for the sale and conveyance of a part of a lot in the city of Chicago, to Mrs. Elizabeth Rogers, mother of the appellant, and under whom he claims, for the sum of $400. On the 31st day of October, 1845, Mrs. Wight and her husband, they residing in the State of New York, executed to Mrs. Rogers a conveyance for the property, in pursuance of said contract.

In the year 1860, the husband of Mrs. Wight died. On the 22d day of December, 1863, Mrs. Wight conveyed the premises to Milton O. Higgins, by a quit claim deed. After his purchase, Higgins commenced a suit in ejectment to recover possession of the property.

This was a suit in equity brought by Rogers, to enjoin the prosecution of that ejectment suit, and to set aside the deed from Mrs. Wight to Higgins, on the alleged ground of its having been obtained by fraud and undue influence, Mrs. Wight having executed to Rogers a quit claim deed of all her

interest in the property on the 3d day of July, 1869—the bill was filed on the 13th day of July, 1869.

During the interval of time between the 10th day of September, 1845, when the revised statutes of 1845 went into effect, and the 22d day of February, 1847, there was no statute of this State which authorized a non-resident married woman to execute a deed for the conveyance of her real estate situate within the State of Illinois; so the deed of October 31, 1845, from Mrs. Wight and her husband to Mrs. Rogers, was void. *Rogers* v. *Higgins*, 48 Ill. 211; *Lane* v. *Soulard*, 15 Ill. 125.

But it is alleged in this bill, that the lot was the separate estate of Mrs. Wight, and it is claimed that in equity, she could deal with it as a *feme sole*, and dispose of it without joining her husband, and that by virtue of the contract of May 31, 1845, and the deed of October 31, 1845, an equitable estate was acquired in this property, and one branch of the appellant's case is, for the assertion of that equitable right.

But in bar of any consideration of that, the appellees set up and insist upon a former adjudication in respect to it, or the same cause of action.

On the 3d day of September, 1867, Rogers filed his bill in equity, against the appellees, to enjoin the prosecution of this same ejectment suit, on the ground of an equity in him arising out of the execution of that same contract and deed; and at its September term, 1868, a final decision of the case was made by this court, adversely to the complainant, affirming the decree dismissing the bill.

In avoidance of this, it is answered, that there was no allegation in the former bill that the lot was the separate estate of Mrs. Wight, so that under the pleadings, this question of Rogers' right to the land, because it was the separate estate of Mrs. Wight, could not have been adjudicated in the former suit. Still, the cause of action in the former bill, and in the present, in this respect, is the same, to wit, that the complainant was entitled to an equity in this property, arising out of the

execution of the said contract and deed from Mrs. Wight to Rogers; and the present bill, so far as said contract and deed are concerned, is only insisting upon an additional ground in support of the same cause of action.

A party can not have a cause of action adjudicated upon piecemeal, in this way.

When the complainant before presented his cause of action before the court, he should have brought forward and urged all the reasons which then existed, for the support of it. The controversy can not be reopened to hear an additional reason, which before existed, and was within the knowledge of the party, in support of the same cause of action.

No one should be twice vexed for the same cause of action.

This principle of *res adjudicata*, embraces not only what actually was determined in the former case, but also extends to any other matter properly involved, and which might have been raised and determined in it. *Stockton* v. *Ford*, 1 Blackf. 360; *Stockton* v. *Ford*, 18 How. U. S. 418.

The appellant has had his day in court as respects this cause of action, an alleged equity growing out of the execution of said contract and deed. That must suffice. He can not be heard again in respect to that.

Another branch of this case is, to assert an alleged equity of Mrs. Wight in this land, obtained from her, by her deed of July 3, 1869, to the appellant, on the ground that the deed from Mrs. Wight to Higgins, was procured by fraud and undue influence. At the time Mrs. Wight made her deed to Higgins, she was 66 years of age, in feeble health, her mind somewhat impaired by age and sickness, but by no means to such an extent as to incapacitate her from entering into a binding contract. She was capable of taking care of her interests and comprehending the contract she made. A court of equity will not interfere in such a case, and set aside a contract on account of mental imbecility alone. *Miller* v. *Craig*, 36 Ill. 109; *Lindsey* v. *Lindsey*, 50 Ill. 79. There is no fraud in the case to call for the interposition of a court of equity to redress.

Mrs. Wight had made a deed of the lot, and received the pay for it; and she did not know, or claim, that she had any interest whatever in it.

Higgins informed her that the title was still in her under the law, and seems to have explained to her how it was. He told her it was doubtful about the recovery of the lot. He might have been more accurate, if the expression of doubt had been whether the lot would pay the cost of its recovery. But this was a matter of opinion only—the vendee's disparagement of the property, where the vendor is not presumed to trust to the vendee, but to rely upon his own judgment. *Fish* v. *Cleland,* 33 Ill. 238; 1 Story Eq. Jur. § 191. But the fact that Higgins immediately afterwards offered the property to Rogers for $1400 or $1500, when it seems to have been worth $4000 or more, and that there were two subsequent decisions of a court of law against the validity of his title, indicate that the opinion so expressed by him, was not only an honest, but a well founded one.

Higgins further represented that making the deed to him would not hurt Rogers, as he was rich, and could stand it. This was immaterial as affecting any legal or equitable interest of Mrs. Wight. It was rather in the nature of a conscientious appeal; and if her moral sense was such, that it allowed her to be moved by the force of an argument like that, to commit a moral wrong towards Mr. Rogers, the blame was her own.

Of a similar character was the representation that it would not injure Rogers' adjoining property. This constitutes the sum of the testimony as to any fraud, and really amounts to nothing in that respect.

The supposed undue influence consisted of solicitation, importunity, argument and persuasion. Of themselves, they would not affect the validity of the deed.

This was a case, no doubt, of very great persistence of importunity. But if by dint of wearisome importunity, a seeming assent had been obtained to the making of the deed, coming not from freedom of the will, but yielding from an inability,

on account of the debilitated condition of the mind and body of Mrs. Wight to make further resistance to the appliances used, as soon as Higgins left this pressure was removed; and what took place afterwards could not justly be imputed to it. After a night's reflection, thinking she had done wrong, as regarded Rogers, Mrs. Wight sent for Higgins the next morning, and requested him to give back the deed she had executed, but he talked her out of it, gave her $100, which she declined to take, but he pressed it upon her and she accepted it, and went on further in the completion of the contract made the evening before, by acknowledging the deed. There does not appear to have been any particular stress of solicitation brought to bear at this time, further than to talk her out, as she says, of demanding the deed back. The $100 may have lent some persausive force to the talk of Mr. Higgins. Here was a recognition of the contract made the evening before.

The nature of the contract may be such as to justify the conclusion that a person of weak understanding has been imposed upon or overcome by artifice or undue influence: But we do not think the contract between Mrs. Wight and Higgins to be of such a character.

He found her ignorant of her title to this property; he acquainted her with it, and then she was regardless of it, as she says. He left her with $100 in her hands, and a contract for the reconveyance of one-third of the property to her after it should be recovered at Higgins' sole expense.

Here certainly was no gross inadequacy of consideration. The adequacy of the consideration should be measured, not by the value of the lot, but by its value after deducting the cost of its recovery. In the light of subsequent events, the consideration here, would seem to have been adequate.

On the 6th day of September, 1864, after there had been two verdicts against the validity of the title of Higgins, in his ejectment suit, Mrs. Wight made an alteration of their former contract when the deed was given, by releasing Higgins from his agreement to reconvey to her one-third of the lot when

recovered, and taking in lieu thereof $100, under the advice or opinion of her two nephews, residing in Chicago, one of whom was a lawyer, and the other a law student, that it was for her interest so to do, and that the $100 was better than the chance of the recovery of one-third of the lot.

Here was a most distinct act of recognition and confirmation of the contract and deed.

If a party has knowledge that he has been defrauded, and yet subsequently confirms the original contract, by making new agreements and engagements respecting it, he thereby waives the fraud, and abandons his claim to equitable relief. *Edwards* v. *Roberts,* 7 Smedes & Marshall's Rep. 544; *Parson* v. *Hughes,* 9 Paige, 591; Fonbl. Eq. 129, note (r.)  A party defrauded can not be allowed to deal with the subject matter of the contract, and afterwards rescind it.   *Musson* v. *Bovet,* 1 Denio, 74.

It is a well settled rule in equity, that where a party seeks to rescind a contract for fraud, he must ask the aid of the court in a reasonable time.

After the lapse of more than five and a half years from the time of the making of the contract and deed; after the subsequent recognition and confirmation of the same ; after standing by and letting Higgins carry on a costly litigation for a series of years for the recovery of the lot, until he had finally established the validity of his title to it by two decisions of this court, in a suit at law and in chancery, Mrs. Wight comes forward, and says she will rescind her contract with Mr. Higgins, and take this title, the validity of which he has established, to herself.   Equity will not permit this to be done.

It is Mrs. Wight's equity, which the appellant is asserting in this case, in her place, and he occupies no better standing than she would herself.

Mrs. Wight never seems to have made any complaint that her own interest had been injuriously affected in this matter ; but her only objection and cause of dissatisfaction have always appeared to have been, the moral wrong to Mr. Rogers.

Story says, the party must have been misled to his prejudice or injury ; for courts of equity do not, any more than courts of law, sit for the purpose of enforcing moral obligations, or correcting unconscientious acts, which are followed by no loss or damage. 1 Story Eq. Jur. § 203.

Mrs. Wight would doubtless, never have moved, herself, in such a proceeding as this. Her deed to Rogers seems to have been a weapon, which, as a last resort, Rogers obtained from her, with which to defend the possession of this lot in his contest with Higgins. We hold it to be an unavailing one.

The decree of the court below dismissing the bill must be affirmed.

*Decree affirmed.*