CHRISTIAN TRISH *et al.*

*v.*

LOUISA NEWELL *et al.*

1. SANITY—*presumption.* Every man is presumed to be of sane mind until the contrary is shown; but if derangement or imbecility be proved or admitted at any particular period, it is presumed to continue until disproved, unless the derangement was accidental—caused by the violence of disease.

2. SAME—*distinction.* There is a distinction in the inferences to be drawn from proof of an habitual or apparently confirmed insanity, and that which may be only temporary. In the first case, proof is required to show a restoration; while in the other, the party alleging insanity must bring his proof of a continued derangement to that point of time which bears directly upon the subject in controversy.

3. It is no more a presumption of law that a person rendered unconscious and incapable of mental action by a stroke of paralysis, will continue so for four months thereafter, than that he would if the same effect was produced by a wound on the head. Such a result may follow in either case, but the law will not so presume.

4. TESTAMENTARY CAPACITY—*burden of proof.* On a bill in chancery to contest a will after its admission to probate, the burden of proof is on those seeking to maintain the will, to show that at the time of its execution the testator was of sound mind and memory, to the extent of understanding what he was about.

5. WILL—*undue influence.* On the trial of an issue, whether an instrument purporting to be a will, was the will of the testator, the court, in substance, charged the jury that it should appear, from *all* the evidence, that it was not the result of undue influence exerted by others over a weak and enfeebled intellect, to the extent of substituting their will for his : *Held,* that the instruction was calculated to confuse and mislead the jury. It requires the fact to appear from *all* the evidence, without regard to the preponderance of proof on the point.

6. TESTAMENTARY CAPACITY—*rule or test of.* From the fact that a man might not be competent to make a will of one kind, and under some circumstances, owing to the nature and extent of the estate, the number of objects and the character of the disposition, when under other and different circumstances requiring less mental effort, he might be, the court appreciates the difficulty in attempting to lay down any definite rule in respect to the exact amount of mental capacity requisite to the making of a valid will.

7. SAME. The best form in which to submit the question to a jury, is, whether the mind and memory of the testator was sufficiently sound to enable him to know and understand the business in which he was engaged at the time he executed the will, judging his competency of mind by the nature of the act to be done, from a consideration of all the circumstances of the case.

8. To be of sound and disposing mind and memory, a person should be capable of making his will with an understanding of the nature of the business in which he is engaged; a recollection of the property he means to dispose of; of the persons who are the objects of his bounty, and the manner in which it is to be distributed between them. It is not necessary that he should comprehend the provisions of his will in their legal form. It is sufficient if he understands the elements of which it is composed—the disposition of his property in its simple forms.

9. Upon the question of testamentary capacity, the court charged the jury that they must be satisfied, upon the evidence, that the testator "had sufficient strength of mind and memory to take into account and retain in his

198 TRISH *et al. v.* NEWELL *et al.* [Sept. T.,

Syllabus. Opinion of the Court.

mind, without dictation from others, the nature and objects of his bounty, the nature and character of his property, and the manner in which he was disposing of it; the person who was the natural object of his bounty, and her claims upon him; the relation which he sustained toward them, who, by the will, were made the recipients of his bounty; and his mind should be sufficient to enable him to have a comprehension that he was disposing of his property by will, and to know how it was being disposed of by said will." *Held* that the charge was erroneous.

10. The court further instructed, "that in order to have sufficient capacity to make a valid will, the testator must have something more than mere passive memory; he must retain sufficient active memory to collect in his mind, without prompting, the particulars or elements of business to be transacted, and to hold them in his mind a sufficient length of time to perceive at least their more obvious relations to each other, and be able to form some rational judgment in regard to them:" *Held*, objectionable, as requiring a capacity not possessed by a great portion of mankind, even without the impairing effect of disease.

11. INSTRUCTIONS should not only be correct in their propositions of law, but should be expressed in clear and concise language, without the use of words meaningless, or tending unnecessarily to embarrass the opposite party.

WRIT OF ERROR to the Circuit Court of Kendall County; the Hon. EDWIN S. LELAND, Judge, presiding.

Mr. C. J. METZNER, for the plaintiffs in error.

Messrs. WHEATON, SMITH & McDOLE, for the defendants in error.

Mr. JUSTICE McALLISTER delivered the opinion of the Court:

This was a bill in equity, brought under the statute of wills, by defendants in error, as husband and wife, the latter being the only heir-at-law of Joseph Wing, deceased, against plaintiffs in error, to set aside what purported to be the last will and testament of said Wing, which had been admitted to probate, on the ground of want of testamentary capacity in him, and for undue influence and fraud exercised and practiced by plaintiffs in error in obtaining its execution.

Answers and replications were filed and an issue made up to be tried at law, whether or not the instrument purporting to be the last will and testament of Joseph Wing, deceased, was his

will. This issue was tried by a jury, and a verdict returned that said instrument was not the will of said Joseph Wing. A motion was made for a new trial, which was overruled by the court, to which exception was taken, and a decree was entered setting aside the will and probate thereof. The evidence, rulings of the court, and exceptions were preserved by bill of exceptions, and the defendants below brought the case to this court by writ of error.

Numerous errors have been assigned, many of which are baseless and untenable, but some of them present questions which are deemed worthy of serious consideration.

It appears that Wing, about the 10th day of July, 1866, being then about eighty years of age, was visited with a severe stroke of paralysis, which at the time rendered him quite, if not wholly unconscious ; but upon being bled he recovered his consciousness, and improved to the extent, as stated by his then attending physician, that he knew his acquaintances and what he wanted, but remained helpless, one side continuing paralyzed, and his powers of speech were irrevocably lost; but as to the degree of capacity attained we desire to express no opinion of our own. He survived until May, 1868. On the 21st of November, 1866, something over four months after the attack, the will in question was executed. His condition, about the time of the attack, and its severity, were not much controverted, but it was maintained by the defendants below, who assumed the burden of proof in respect to his sanity, that, however violent the stroke might have been, still he soon recovered measurably from it, and was so far improved at the time of making the will that he then possessed full testamentary capacity. This was controverted by complainants below, who insisted that by the severity of the stroke of paralysis he became and continued, down to the time of making the will, so far deprived of mind and memory as to be incapable of making a valid will; and, at all events, he was thereby reduced to such a weak condition of body and defect of intellect as to render him a mere passive instrument in the hands of those about him, and that, therefore, his feeble condition of body and mind, in con-

200          TRISH *et al. v.* NEWELL *et al.*          [Sept. T.,

Opinion of the Court.

nection with the other proof as to surrounding circumstances and dominion over him, on the part of some of the defendants below, furnished most essential and convincing proof that this particular will was made without the proper legal consent of the testator.

Such being the theory of the case by the respective parties, each party introduced a large mass of evidence in support of the grounds taken.

On behalf of the complainants, the court, by the third instruction, directed the jury as follows :

" If the jury believe, from the evidence, that, on the 10th day of July, 1866, the deceased, Joseph Wing, was, by a stroke of paralysis, rendered entirely unconscious, and of unsound mind and memory to the extent defined in other instructions, the law presumes such unsoundness of mind to continue until the contrary is proven; and the burden of proof is on those now seeking to establish this will, to show affirmatively, and to the satisfaction of the jury, that said Wing subsequently, and before said alleged will was made, became of sufficiently sound mind, and of a sufficiently rational and disposing mind at the time of the execution thereof, so that he could and did comprehend its motive and effect; and they must establish this by preponderance of proof, or the jury must find against the alleged will."

Exception was taken to this instruction by the defendants below, and the giving of it is assigned for error.

This instruction was wrong, and must have been very prejudicial to the opposite party. Greenleaf says, " Every man is presumed to be of sane mind until the contrary is shown ; but if derangement or imbecility be proved or admitted at any particular period, it is presumed to continue until disproved, *unless the derangement was accidental—caused by the violence of disease.* 1 Greenlf. on Ev. § 42.

In *Hix* v. *Whittemore,* 4 Met. (Mass.) 545, a similar instruction was given. The court, Dewey, J, delivering the opinion, says :

" The force of presumption arises from our observation and

experience of the mutual connection between the facts shown
to exist and those sought to be established by inference from
those facts. Now, neither observation nor experience shows
us that persons who are insane from the effect of some violent
disease do not usually recover the right use of their faculties."
Such cases are not unusual, and the return of a sound mind
may be anticipated from the subsiding or removal of the dis-
ease which has prostrated their minds. It is not, therefore, to
be stated as an unqualified maxim of the law, " Once insane
presumed to be always insane ;" but reference must be had to
the peculiar circumstances connected with the insanity of an
individual, in deciding upon its effects upon the burden of
proof, or how far it may authorize the jury to infer that the
same condition or state of mind attaches to the individual at a
later period. There must be kept in view the distinction be-
tween the inferences to be drawn from proof of an habitual
or apparently confirmed insanity and that which may be only
temporary. The existence of the former once established
would require proof from the other party to show a restora-
tion or recovery ; and in the absence of such evidence insanity
would be presumed to continue ; but if the proof only shows
a case of insanity directly connected with some violent disease
with which the individual is attacked, the party alleging the
insanity must bring his proof of continued insanity to that
point of time which bears directly upon the subject in contro-
versy, and not content himself merely with proof of insanity
at an earlier period. The learned judge cited the case of
*Cartwright* v. *Cartwright*, 1 Phillim. 100, where the same dis-
tinction was taken ; also 1 Williams .on Executors 17, 18 ;
Swinburne on Wills, Part 2, Sec. 3 ; 1 Collison on Lunacy, 55 ;
Shelford on Lunacy 275 ; 1 Hale P. C., 30.

It is no more a presumption of law that a person rendered
unconscious and incapable of mental action by stroke of paral-
ysis will continue so for four months thereafter, than that he
would so continue when the same effect was produced by a
wound on the head. Such a result might follow in either case,
but the law does not presume that it would in either.

The instruction we have just been considering is so essentially erroneous, that, for giving it, we must reverse the decree. But we feel constrained to condemn others given on behalf of complainants, viz.: the first, fourth, and fifth. The first is as follows:

"The burden of proof is upon those seeking to establish that the paper introduced in evidence is the will of said Joseph Wing, deceased, to show that at the time of the alleged execution thereof the said Wing was of sound mind and memory, to the extent of understanding what he was about; and that the alleged will was the free and deliberate offspring of a sufficiently rational and disposing mind to comprehend the nature and effect of the will; and it should appear, from *all* the evidence, that it was not the result of undue influence exerted by others over a weak and enfeebled intellect to the extent of substituting their will for his; these are, however, proved till the contrary appears, if the facts are as mentioned in defendants' first and second instructions."

It is correct in reference to the rule announced respecting the burden of proof. But the expression that "it should appear, from *all* the evidence, that it was not the result of undue influence," etc., was calculated to confuse and mislead the jury. And the last clause, commencing with the words "these are," seems utterly meaningless. Instructions should not only be correct in their propositions of law, but should be expressed in clear and concise language, without the interjection of words having a tendency to unnecessarily embarrass or render impossible the maintenance of the case of the opposite party. If the defendants below were required, as this instruction, taken literally, declares, to make it appear from *all* their evidence that the will was not the result of undue influence, they would necessarily fail, no matter how good a case they had upon the preponderance of proof.

The fourth and fifth instructions are as follows:

"Upon the question of the mental capacity necessary to make a valid will, the jury are instructed that, in order to find the alleged instrument to be the will of the deceased, Joseph Wing

they must be satisfied upon the evidence that the said Wing had sufficient strength of mind and memory to take into account and retain in his mind, without dictation from others, the nature and objects of his bounty, the nature and character of his property, and the manner in which he was disposing of it; the person who was the natural object of his bounty, and her claims upon him; the relation which he sustained toward them, who, by the will, were made the recipients of his bounty; and his mind should be sufficient to enable him to have a comprehension that he was disposing of his property by will, and to know how it was being disposed of by said will."

"Upon the question of testamentary capacity, the jury are further instructed that, in order to have sufficient capacity to make a valid will, the testator must have something more than mere passive memory, he must retain sufficient active memory to collect in his mind, without prompting, the particulars or elements of business to be transacted, and to hold them in his mind a sufficient length of time to perceive at least their more obvious relations to each other, and be able to form some rational judgment in regard to them."

The propositions embodied in these instructions are taken principally from an elementary treatise of a high character, and the last of the two is copied literally from the opinion of the court in *Converse* v. *Converse,* 21 Vermont, 168.

It is probable that no court has ever attempted to lay down any definite rule in respect to the exact amount of mental capacity requisite to the making of a valid will, without appreciating the difficulty of the undertaking; and we experience it in no slight degree. We are unwilling to adopt so low a standard as that approved in *Stewart* v. *Lispenard,* 26 Wend. 255, that wills of persons of the lowest degree of mental capacity are to be sustained if there is a glimmer of reason. Nor do we approve, as a rule, that embraced in the last instruction. As a passage in legal literature, it sounds well; and as an attempt to group the several elements of capacity, debated by the courts, into one compact sentence, commands admiration. But when closely analyzed, it requires and would convey to the

minds of the jurors a degree of capacity which they themselves possessed, or which is possessed by the average of mankind in good health. If a man have a memory so active as to collect in his mind, without any prompting, all of the particulars or elements of such a business as making a will, and power to hold them in his mind long enough to perceive all their obvious relations to each other, and then be able to form a rational judgment in regard to them, he is a man of ordinary capacity and ability, at least; and a not inconsiderable portion of mankind, would, under this rule, be found incapable of making a will, even without the impairing effects of disease. A brief retrospect by any lawyer of experience will lead him to the conclusion that scarcely none of his clients for whom he has drawn wills, were even able to go through with it without much prompting as to particulars, especially where the estate was large, diversified as to kinds of property, and to be distributed among several legatees or devisees. It is true, as said by Justice Washington, in *Harrison* v. *Rowan*, 3 Wash. C. C. Rep. 585, "He must, in the language of the law, have a sound and disposing mind and memory. In other words, he ought to be capable of making his will with an understanding of the nature of the business in which he is engaged; a recollection of the property he means to dispose of; of the persons who are the objects of this bounty, and the manner in which it is to be distributed between them. It is not necessary that he should view his will with the eye of a lawyer, and comprehend its provisions in their legal form. It is sufficient if he has such mind and memory as will enable him to understand the elements of which it is composed—the disposition of his property in its simple forms."

In *Marsh* v. *Tyrrell*, 2 Flagg, 122, that eminent and experienced judge, Sir John Nicholl, said: "It is a great but not uncommon error to suppose that, because a person can understand a question put to him, and can give a rational answer to such question, he is of perfect sound mind, and is capable of making a will *for any purpose whatever*; whereas the rule of law, and it is the rule of common sense, is far otherwise; the

competency of the mind must be judged of by the nature of the act to be done from a consideration of all the circumstances of the case."

The idea here intended to be conveyed by the learned judge is, that a man might not be competent to make a will of one kind and under some circumstances in relation to the estate, the number of objects, and the character of the disposition, when under other and different circumstances, requiring less mental effort, he might be. We know, practically, that it requires a less degree of capacity to thus dispose of a single farm and the usual personal property owned by a farmer, by a distribution among a few recipients, than of a large and diversified estate, among numerous recipients, with various gradations of their bounties. So that there can be no safer practical rule than that the competency of the mind should be judged of by the nature of the act to be done, from a consideration of all of the circumstances of the case. Jarman in his treatise on Wills, vol. 1, p. 51, after referring to the leading cases upon this subject, comes to the conclusion that the question in its most simple and intelligible form should be stated thus: "Were his mind and memory sufficiently sound to enable him to know and understand the business in which he was engaged at the time he executed the will." And we agree with the observation of the court in *McClintock* v. *Curd*, 32 Missouri, 419, that this is the best form in which the question can be submitted to a jury, with this addition, that in determining the question, the competency of the mind should be judged of by the nature of the act to be done, from a consideration of all the circumstances of the case.

We have discussed this question without any reference to the agency of undue influence or fraud, which presents other considerations. The decree of the court below is reversed and the cause remanded.

*Decree reversed.*