RUTH CAMPBELL *et al.*

*v.*

GEORGE W. CAMPBELL *et al.*

*Filed at Springfield October 31, 1889.*

1. WITNESSES—*disclaimer by party—as executor and trustee—competency—on contest of will.* A testator named one as his executor and also devised to him certain lands in trust. On the probate of the will the executor appointed in the will refused to act as such, whereupon an administrator with the will annexed was appointed. On bill filed to contest the will, making the executor a party defendant, he filed a written disclaimer of the trust, and on his motion the bill as to him was dismissed: *Held,* that before his disclaimer of the trust the executor and trustee appointed in the will was a proper party defendant, but after such disclaimer he ceased to have any interest in the litigation and was properly dismissed from it, and became a competent witness in the case.

2. SAME—*competency of witness—presumption—burden of proof.* The presumption being in favor of the competency of a witness, the burden is upon the objector to show that he is incompetent to testify, by reason of interest or otherwise. A witness will not be excluded on the ground of interest, if the question of his interest is in doubt.

3. SAME—*interest of a proposed witness—in what way determined.* The law affords two modes of determining the interest of a witness in the result of the suit: First, by examining him on his *voir dire;* and second, by extrinsic evidence. The true test of the competency of a witness is, will he gain or lose by the decree or judgment sought?

4. On bill to contest a will, the complainant called three witnesses, who had been made defendants in the suit, and had suffered a default to be taken against them, to prove the incapacity of the testator. They were all devisees under the will. The court, without determining whether the proposed witnesses would gain or lose by a decree setting aside the will, excluded their testimony: *Held,* that the court erred in excluding the testimony of those witnesses without first having ascertained on which side their interest lay. In such case the mere fact that they were heirs of the testator did not establish their incompetency, or show they would take a greater share as heirs than as devisees.

5. TESTAMENTARY CAPACITY—*in what it shall consist.* Competency to make a will does not exist unless the party making it has reason and understanding sufficient to comprehend the act. The alleged testator must not only be able to answer familiar and usual questions, but he must have a disposing memory, so that he is able to make a disposition

of his property with understanding and reason, or according to a fixed judgment or settled purpose of his own. He must have that degree of recollection that will enable him to look about the property he has to dispose of, and the person or persons to whom he wishes to devise it, or who are the objects of his bounty.

6. To constitute a sound and disposing mind, it is not necessary that the mind shall be wholly unbroken, unimpaired and unshattered, by disease or otherwise, or that the testator be in full possession of all his reasoning faculties. If the testator be in a dying state, he has capacity, if, when his attention is aroused, his mind acts clearly and with discriminating judgment in respect of the act to be done and its relations.

7. A man may be competent to make a disposition of his property by will where it is simple and easy of comprehension, and at the same time be incompetent to make a will which involves a very large estate, and the consideration of the natural claims of a large number of relatives.

8. On the trial of the issues on a bill to contest a will, the court, on behalf of the proponents of the will, instructed the jury that the fact, if proved, that the testator was, at the time of the execution of the paper, physically unable to look after his affairs or property, or that his mind was impaired by age or disease, if not to the point of lunacy or absolute imbecility, did not take from him the legal capacity to make a will: *Held,* that the instruction was erroneous, as adopting too low a standard of testamentary capacity.

9. The true inquiry in every case is, did the alleged testator have, at the time of making his will, such mind and memory as enabled him to understand the business in which he was then engaged, and the effect of the disposition made by him of his property. If he had, he must be taken as having the sound mind and memory required by the statute. But all degrees of impairment of the mental faculties, or dementia, whether senile, or produced by other causes, which destroy his mental capacity, will disqualify, whether the mind has reached the stage of absolute imbecility or not.

WRIT OF ERROR to the Circuit Court of Jersey county; the Hon. GEORGE W. HERDMAN, Judge, presiding.

Mr. WILLIAM BROWN, and Mr. J. S. CARR, for the plaintiffs in error:

Dr. C. W. Enos, being the executor named in the will, and being specifically charged in the bill with fraudulent action in obtaining the pretended execution of the will, was properly made a defendant. Being interested in the object of this suit, he was a necessary party. Story's Eq. Pl. 76, 76 a.

Enos being originally a proper party defendant, was not a competent witness. *Hurlbut* v. *Meeker*, 104 Ill. 542.

The witnesses Rachel Williamson, Mary A. Sweeney and Genevieve Smith were all competent witnesses. The true test of the competency of these witnesses was, would they gain or lose by a decree sustaining the will. *McClure* v. *Otrich*, 118 Ill. 320.

Equity views not so much their position on the record, as their interest in the subject matter of the litigation. In this case, these witnesses, being defendants, were *prima facie* competent, and before excluding them the court should have ascertained their real interest. *Corderey* v. *Hughes*, 6 Bradw. 404.

Instructions should be based on the evidence as applied to the issues to be tried. *Mitchell* v. *Town of Fond du Lac*, 61 Ill. 174; *Means* v. *Lawrence*, id. 137; *Weaver* v. *Rylander*, 55 id. 529; *Holcomb* v. *Davis*, 56 id. 413.

Each party to a suit has a right to have the law accurately stated when the evidence is conflicting. *Railroad Co.* v. *Maffit*, 67 Ill. 431.

Where instructions given are liable to confuse the jury, it is error. *Railroad Co.* v. *Larmon*, 67 Ill. 68.

Instructions given to the jury, which relate to matters not in issue, are erroneous. *Wallard* v. *Worthman*, 84 Ill. 446; *Bartlett* v. *Cunningham*, 85 id. 22.

Messrs. Chapman & Slaten, and Messrs. Morrison & Whitlock, for the defendants in error:

Dr. Charles W. Enos was not a proper party. He was not interested in the subject matter in litigation, and should not have been made a party. The fact that he was named as the executor, and that the will made provision for vesting the title to certain property in the executor, in trust, did not vest in him any interest, in any legal sense, until he qualified, and inasmuch as he declined to qualify, he was not a proper party,

and it was correct to grant the motion to dismiss as to him. *Frye* v. *Bank of Illinois,* 5 Gilm. 336.

Enos was a competent witness, and this was true without regard to the fact that he was named as one of the defendants, because he had no interest in the result of the litigation. He could neither make nor lose, no matter what was the result of the contest. *McClure* v. *Otrich,* 118 Ill. 320 ; *Walker* v. *Dement,* 42 id. 276.

Neither Mary A. Sweeney, Rachel C. Williamson nor Genevieve Smith were competent witnesses against defendants in error. They were nieces of the testator, and sisters of some of the complainants in the bill. They had each been made defendants, and, it is true, stood on the opposite side of the record. But did this afford the true test? They stood upon the record with defendants in error, but they had each made default, and their interest in the result of the suit was with the complainants in the bill. In fact, each had confessed the allegation in the bill contained.

Mrs. Williamson was asked a question as to the mental capacity of Mr. Neely to make a will. To this, objection was made and sustained, but no exception was taken to the ruling. She was then asked if she remembered a conversation with the testator, in March, after the will was executed, and objection was sustained to this, and exception taken. This is the only exception to any ruling of the court upon her evidence. What Mr. Neely may have said after the will was executed was not competent evidence to overthrow the instrument, and the ruling was right. *Hurd* v. *Brown,* 41 Ill. 121 ; 25 id. 616 ; *Alexander* v. *Crosthwaite,* 44 id. 359 ; *Bragg* v. *Gaddes,* 93 id. 39.

The fifth instruction given by the court, for the defendants in error, is the only one called in question by counsel in their brief. We may therefore assume, we suppose, that all other instructions are admitted to be correct. This instruction was drawn from the opinion of this court, as expressed by Mr. Justice SCHOLFIELD in the case of *Kimball* v. *Cuddy,* 117 Ill. 232.

The instruction is taken as nearly literally as it could be drawn from that opinion, having due reference to the parties, etc. *English* v. *Porter,* 109 Ill. 285; *Willemin* v. *Dunn,* 93 id. 511; *Brown* v. *Riggin,* 94 id. 560; *Trish* v. *Newell,* 62 id. 196; *Roe* v. *Taylor,* 45 id. 485; *Rutherford* v. *Morris,* 77 id. 397; *Meeker* v. *Meeker,* 75 id. 265; *Bible Society* v. *Price,* 115 id. 623.

Mr. Chief Justice Shope delivered the opinion of the Court:

This was a bill in chancery, by Ruth Campbell and others, heirs-at-law of Joshua Neely, deceased, to set aside his will, upon two grounds,—want of testamentary capacity of the deceased, and that undue influence had been practiced by Charles W. Enos and others, to induce the testator to execute the supposed will.

By the will, Dr. Enos was appointed executor, and also trustee, in respect of some of the land devised, and given large discretionary powers in respect of the application of the proceeds of the estate devised to him in trust. He refused to qualify as executor, and after this bill was filed, made and filed a written disclaimer of any interest in the estate, or any part thereof, which would be affected by or be dependent upon the maintenance or setting aside of such supposed will; and afterwards filed his motion, in writing, to dismiss the bill as to him, for the reason that the bill showed he had no interest in the subject matter in litigation, in this, that the bill stated he was appointed executor by said will, and that on probate thereof he refused to act in that capacity, and that thereupon one Bowman was appointed administrator of the estate of Joshua Neely, with the will annexed, and for the further reason that he had filed his disclaimer, setting forth that he had no interest in the matter in controversy. The motion was allowed, and the bill dismissed as to said Enos, and this action of the court is assigned for error.

If Enos had qualified as executor, he would have been a necessary party to the bill. His refusal to qualify, and the

appointment of an administrator, removed his interest as executor. But being a trustee of certain lands, and taking the legal title thereto under the will, he was a proper party defendant before his disclaimer. By the will, certain lands were devised to Enos in trust, to apply the net income therefrom to the support of John Harper for life, and after his decease, for the support, education and comfort of Rebecca Welch, and her daughter, Nancy B. Welch, with power of sale; and also another tract of land, in trust, to apply the net income among William H. Smith and four children, Mary Welch, Bridget Minard, Alexander Welch and Gallant H. Boswell, and $50 per annum to William Richard Neely, Richard Quinn, Jr., as he might deem just and equitable. Enos never having accepted the trust, or assumed to exercise the power conferred, had the right to disclaim the same, as he did, and thereafter ceased to have any interest in the estate or the litigation concerning the will. Lewin on Trusts, 195, 197; Hill on Trustees, 221.

This view also disposes of the second error assigned,—that Enos was permitted, against the objection of complainant, to testify as a witness. By his refusal to act either as executor or trustee under the will, he ceased to have any interest in the subject matter in controversy, and became a competent witness for either party.

It is next assigned for error, that the court refused to allow contestants to examine, as witnesses, Rachel C. Williamson, Mary Sweeney and Genevieve Smith, who were all defendants to the bill, and had suffered the same to be taken as confessed as to them. It is said they were nieces of the testator and sisters of some of the complainants.

Rachel C. Williamson testified that she was at George Campbell's house, who was one of the proponents of the will, some time prior to the making of the will, and that said George then said, in reference to Mr. Neely's making the will, "I had better go on licking—I am going to have him make a will;" that she

asked him if he thought Neely was in condition to make a will, and he said he was; that she told said George that he had better make her equal with him, or she would swear that he was not. She was then asked whether or not, when the will was made, the testator had sufficient mental capacity to make a will. This was objected to by the proponents of the will because she was an heir-at-law of said Neely, and a party interested adversely to the proponents, and the court sustained the objection. She further testified there were three heirs of the original branch of the Neely family; that she was a niece of Joshua Neely, and had four brothers and three sisters,—that is, there were eight in her branch of the Neely family. She was then asked this question: "Do you remember the conversation you had at the house of Joshua Neely, with Uncle Joshua Neely and your brother William Campbell, in March after the making of the will?"—which was objected to, and the court sustained the objection, upon the ground of the incompetency of the witness to testify.

It will be seen that this witness was a niece of the testator; that said testator, Joshua Neely, had three brothers and sisters, and that upon his dying intestate, his estate would descend to such brothers and sisters, or their children. This would entitle this witness, as heir-at-law of Joshua Neely,—he having died without issue,—to one twenty-fourth part of his estate, after the payment of the debts and expenses of administration. It was stipulated that the debts of the estate amounted to between $10,000 and $12,000. By the will, one hundred acres of land was devised to this witness for life, with remainder to her heirs. The land thus devised is claimed to be worth $4500. The court, however, refused to permit any inquiry to be made as to her interest for or against the will.

In Stewart Rapalje on Law of Witnesses, (page 293, sec. 171,) it is said: "It is a well settled rule that the competency of one offered as a witness to testify in the case will be presumed, and the party objecting to his competency must state

the grounds of his objections." And on page 299, (sec. 177,) it is said: "The presumption being in favor of competency, the burden is upon the objector to prove that one offered as a witness is incompetent to testify, by reason of interest or otherwise. Thus, to exclude a witness on the ground that his testimony, if admitted, will tend to protect him from claims against him, it must first be shown that there is at least a *prima facie* case of liability against him, and that he is exposed to certain danger from such claims. The objector must point out to the court the ground of incompetency. The witness will not be excluded on the ground of interest if the question of his interest is in doubt." In section 174 of the same work it is said: "Objection to the competency of a witness having been made, the question of competency must be decided, no matter how difficult it may be to determine as to his interest or want of interest. To reject him in such a case, without deciding the question, is error, and to admit him is equally erroneous."

The law affords two modes of determining the interest of a witness in the result of a suit: First, by examining him on his *voir dire;* and second, by extrinsic evidence. The true test of the competency of these three witnesses is to be determined by ascertaining whether they would gain or lose by a decree setting aside the will. Being defendants, they were *prima facie* competent to testify on behalf of the contestants, and before excluding them, the court should have ascertained their real interest. It devolved upon the party objecting to show the court that their interest was with the party offering them as witnesses, if that fact did not otherwise appear. If they would not gain by having the will set aside, they were competent, otherwise they were not. The will, which was before the court, showed that they were devisees thereunder, and without further evidence on the subject, their evidence at least would appear to be adverse to the contestants and in favor of the proponents of the will. The fact, if conceded, that they were

heirs-at-law of the testator, would not, of itself, establish their incompetency, or show that they would take a greater share as heirs than as devisees.

Mary Sweeney testified that there were seven of her family, representing one-third of the estate as heirs-at-law of Joshua Neely, so that, as heir-at-law, she would be entitled to the one twenty-first part of the estate of the deceased. She also testified that the land she lived on,—being a part of that devised to her,—was worth from $3000 to $4000, and that another tract devised to her was worth $1000. Without any further inquiry as to her interest, the court sustained the objection to her competency, and the same ruling was made, substantially, as to witness Genevieve Smith. The contestants, to show the real interest or competency of these witnesses, proved by Bowman, the administrator, that the value of the estate was from $75,000 to $80,000, and that the value of the land devised to Mary Sweeney was $4280. This and the other proofs showed that her share in the estate, as heir, was about $3430, which would indicate that she was called to testify against her interest, and therefore competent. After this proof, contestants recalled Mrs. Sweeney, and asked her if she wanted the will set aside or not; whether she had any conversation with Joshua Neely in the fall before the will was made; whether she had any conversation with him in reference to any fear of those that were around him, and whether, in that connection, he expressed any fear to the witness, of his life. The court sustained objections to each of these questions, and refused to allow the witness to testify, on the ground of her interest. We think there was error in holding these witnesses incompetent to testify, without proof that their interest was with the contestants. In other words, the court should have ascertained their interest, and if they were called to testify against such interest, they should have been permitted to testify.

The giving of the fifth instruction for the proponents is also assigned as error. The portion of the instruction of which complaint is made is that part which states that the fact, if proved, that Joshua Neely was, at the time of the execution of the paper, physically unable to look after his affairs or property, or that his mind was impaired by age or disease, if not to the point of lunacy or absolute imbecility, did not take from him legal capacity to make said will. By section 1 of the Statute of Wills, "every male person of the age of twenty-one years, and every female of the age of eighteen years, being of sound mind and memory," is given the power to dispose of his or her property by will. The expression, "sound mind and memory," has been held by this court to mean nothing more than "sound and disposing mind," and is equivalent to the term "sanity." *Yoe* v. *McCord,* 74 Ill. 33 ; *Dickie* v. *Carter,* 42 id. 377 ; *Andrews* v. *Black,* 43 id. 256.

Competency to execute a will does not exist unless the alleged testator has reason and understanding sufficient to comprehend such act. *Delafield* v. *Parish,* 25 N. Y. 22 ; *Marquis of Winchester's case,* 6 Coke, 23 ; *Combes' case,* Moore, 759 ; *Herbert* v. *Lowe,* 1 Ch. 12 ; *Mountain* v. *Bennett,* 1 Cox, 353 ; Swinbourne on Wills, part 2, sec. 4.

In the *Marquis of Winchester's case,* it is said : "It is not sufficient that the testator be of memory, when he makes his will, to answer familiar and usual questions, but he ought to have a disposing memory, so that he is able to make a disposition of his lands with understanding and reason, and that is such a memory which the law calls sane and perfect memory."

In *Mountain* v. *Bennet,* 1 Cox, 353, it is said : * * * "If a dominion was acquired by any person over a mind of sufficient sanity to general purposes, and of sufficient soundness and discretion to regulate his affairs in general, yet if such dominion or influence were acquired over him as to prevent the exercise of such discretion, it would be equally inconsistent with the idea of a disposing mind."

In *Greenwood* v. *Greenwood*, 3 Curt. App. 2, Lord KENYON said, in his charge to the jury : "I take it, a mind and memory competent to dispose of his property, when it is a little explained, perhaps may stand thus : Having that degree of recollection about him that would enable him to look about the property he had to dispose of, and the persons to whom he wished to dispose of it. If he had a power of summoning up his mind so as to know what his property was, and who·those persons were that then were the objects of his bounty, then he was competent to make his will."

In *Marsh* v. *Tyrrell*, 2 Hagg. 122, Sir JOHN NICHOLL said : "It is a great but not an uncommon error to suppose that because a person can understand a question put to him, and can give a rational answer to such question, he is of perfect, sound mind, and is capable of making a will for any purpose whatever ; whereas the rule of law—and it is the rule of common sense—is far otherwise. The competency of the mind must be judged of by the nature of the act to be done, and from a consideration of all the circumstances of the case." See, also, *Blewett* v. *Blewett*, 4 Hagg. 419 ; *Boyd* v. *Eby*, 8 Watt, 70 ; *McTaggart* v. *Thompson*, 14 Pa. St. 149 ; *Brown* v. *Torrey*, 24 Barb. 583 ; *Hall* v. *Hall*, 18 Ga. 40.

In *Shropshire* v. *Reno*, 5 J. J. Marsh. (Ky.) 91, the court said that "the testator had not a disposing mind, or that if he even had, it was not in a disposing state. He was not entirely superannuated, nor was he absolutely *stultus* or *fatuus*, but all the facts combined tend to show that he had not a sound memory nor sufficient mind, nor a mind in a proper state of disposing of his estate with reason or according to any fixed judgment or settled purpose of his own,"

In *Clark* v. *Fisher*, 1 Paige, 171, Chancellor WALWORTH said : "The general principles of law in relation to the capacity of a person to make a will are well understood. He must be of sound and disposing mind and memory, so as to be capable of making a testamentary disposition of his property with

sense and judgment, in reference to the situation and amount of such property, and to the relative claims of the different persons who are or might be the objects of his bounty."

The question presented by the fifth instruction is, whether the mind of the testator, when impaired by age and disease, must be impaired to the *point of lunacy* or *absolute imbecility* to deprive him of testamentary capacity, or to render him of unsound mind and memory, or to deprive him of a disposing mind. Absolute imbecility implies a total want of reason and an utter loss of memory. The language of the instruction is to be understood in its ordinary sense and acceptation. An "imbecile" is defined by Webster as one destitute of strength, either of body or of mind,—weak, feeble, impotent, decrepit. Imbecility is defined as the quality of being imbecile,—feebleness of body or mind. The word "absolute," in respect of the sense in which it is used in the instruction, is defined as completed or regarded as complete,—finished, perfect, total,—and the synonyms are, perfect, total, and complete. There are many degrees in the weakness of mind before reaching total, or perfect, or absolute imbecility,—that is, before reaching utter and complete destitution of reason or rationalty; and it must be apparent to every one, that a man, before reaching this point, may be incapable of comprehending the extent or nature of his property, or of claimants upon his bounty, and of making a rational selection among them. The rule stated in Buswell on Insanity (sec. 365) is, that "to constitute a sound and disposing mind it is not necessary that the mind should be unbroken, unimpaired, unshattered by disease, or otherwise, or that the testator should be in full possession of his reasoning faculties. So if the testator be in a dying state, he has capacity, if, when his attention is aroused, his mind acts clearly and with discriminating judgment in respect of the act to be done, and its relations. Thus, it is held that one may be competent to make a codicil, changing in two or three particulars the dispositions previously made by him in his will,

although he might be incompetent to perform acts requiring the exercise of greater intellect or judgment, as, to make an entirely new disposition of his property."

In note 1, Jarman on Wills, (p. 28,) it is thus stated: "The question is not so much what was the degree of memory possessed by the testator, as, had he a disposing memory? Was he capable of recollecting the property he was about to bequeath, the manner of distributing it and the objects of his bounty,—in a word, were his mind and memory sufficiently sound to enable him to know and understand the business in which he was engaged at the time when he executed his will?" See authorities there cited.

The author from whom we have before quoted,—Buswell on Insanity,—at section 363 says: "Thus it is evident that a correct understanding of the act done must include an intelligent comprehension of its surrounding circumstances, and of its direct consequences and probable results. So, to constitute a sound disposing mind, the testator must be able, not only to understand that he is, by his will, disposing of his property, but he must also have capacity sufficient to comprehend the extent of the property devised and the nature of the claims of others upon him."

In *Converse* v. *Converse*, 21 Vt. 168, it is held, that if the testator, when he made his will, was capable of knowing and understanding the nature of the business he was then engaged in, and the elements of which the will was composed, and the disposition of his property as therein provided for, both as to the property he meant to dispose of by his will and the persons to whom he meant to convey it, and the manner in which it was to be distributed, then he possessed a sound and disposing mind.

The same rule has, in many cases, been substantially adopted by this court. In *Roe* v. *Taylor*, 45 Ill. 485, we said: "An understanding of the nature of the business about which the testator was engaged, and of the kind and value of the property

devised, and of the persons who were the natural objects of his bounty, and of the manner in which he wished to dispose of his property,—all these were evidence of the possession of testamentary capacity, unless, as the court very properly said, the testator was affected with some morbid or insane delusion as to some one of those objects of his bounty." See, also, *Trish* v. *Newell*, 62 Ill. 196, *Yoe* v. *McCord*, 74 id. 33, *Carpenter* v. *Calvert*, 83 id. 62, *American Bible Society* v. *Price*, 115 id. 623, and *Freeman* v. *Easly*, 117 id. 317, where the same rule, in effect, is announced. We also said in *Meeker* v. *Meeker*, 75 Ill. 260 : "It is a rule of law that a person who is capable of transacting ordinary business is also capable of making a valid will." If he is capable of buying and selling property, settling accounts, collecting and paying out money, or borrowing and loaning money, he must usually be regarded as capable of making a will. See *Lilly* v. *Waggoner*, 27 Ill. 395 ; *Myatt* v. *Walker*, 44 id. 485 ; *Rutherford* v. *Morris*, 77 id. 397 ; *Trish* v. *Newell, supra; Brown* v. *Riggin*, 94 Ill. 560 ; *English* v. *Porter*, 109 id. 285 ; *Bice* v. *Hall*, 120 id. 597 ; *Schneider* v. *Manning*, 121 Ill. 376. As to the capacity to make a deed of land, see *Lindsey* v. *Lindsey*, 50 Ill. 79 ; *Wiley* v. *Ewalt*, 66 id. 226; *Willemin* v. *Dunn*, 93 id. 511 ; *Miller* v. *Craig*, 36 id. 109.

In *Yoe* v. *McCord, supra*, we said : "In 1 Redfield on Wills, 123, 124, the author states that 'the result of the best considered cases upon the subject seems to put the quantum of understanding requisite to the valid execution of a will, upon the basis of knowing and comprehending the transaction, or, in popular phrase, that the testator should, at the time of executing the will, know and understand what he was about.' This last mode of the expression of the doctrine is intelligible to a jury, and embodies about the whole rule on the subject, so far as can profitably be given to a jury. * * * When the court undertakes to inform them what amount of mental capacity a man must have to know and understand what he is

about, it is futile, and tends rather to mislead than to afford any practical aid to the jury."

We have also given sanction to the doctrine that a man may not be competent to make a will of one kind, owing to the nature and extent of the estate, when he may be competent to make one less complicated. *Trish* v. *Newell*, 62 Ill. 196. See, also, Buswell on Insanity, secs. 362-365; Beach on Wills, 175.

It follows, as a natural consequence, that if a man may make a valid will which is simple and easy of comprehension, and yet be incapable of making one which involves, as here, a very large estate, and the consideration of the natural claims of a large number of relatives upon him, the rule laid down in the fifth instruction can not be a correct exposition of the law. Absolute imbecility incapacitates the party from making any kind of a will, even the simplest in form. This court has condemned an attempt on the part of the trial court to inform the jury what quantum of mental capacity must be retained to enable the party to make a valid will. In *Trish* v. *Newell*, *supra*, we said: "We are unwilling to adopt so low a standard (of the capacity to make a will) as that approved in *Stewart* v. *Lispenard*, 26 Wend. 255, that wills of persons of the lowest degree of mental capacity are to be sustained if there is a glimmer of reason." It is true that in *Blanchard* v. *Nestle*, 3 Denio, 37, mainly on the authority of the *Lispenard case*, the doctrine that mere imbecility, however great, would not invalidate the will of the testator, provided he was not an idiot or a lunatic, is affirmed. But it is to be remarked that the case of *Stewart* v. *Lispenard* was subsequently overruled in *Delafield* v. *Parish*, 25 N. Y. 9, and is no longer to be regarded as an authority.

The capacity to comprehend a few simple details, may, in one case, suffice to enable the party to intelligently dispose of his property by contract or will, while in another case, if the estate be large, requiring the remembrance of many facts and the comprehension of many details, and the disposition to be

made is complicated, the same mental capacity may be wholly insufficient to that intelligent understanding of the business requisite to the making of a valid will. If, in the latter case, the party, because of weakness of intellect, is incapable of understanding and remembering the nature and extent of his property, and the disposition he wishes to make of it, he has reached that stage of imbecility which disqualifies him, in the particular case, to make a valid will, but his imbecility has not necessarily reached totality, and is not necessarily absolute, for although, from the complicated character of the business he is endeavoring to transact, he is unable to comprehend it, or the effect or result of his act, yet if his affairs were less complicated he might intelligently comprehend them, and make rational disposition of his property. As before said, absolute imbecility would necessarily mark a stage in the malady where there was perfect inanition,—when all mental vigor was lost, and the person affected would be incapable of exercising memory, or the processes of reason, however slight, and therefore incapable of making any will, however simple in its details. Something more is required to give testamentary capacity than mere passive memory.

The true inquiry, in every case, therefore is, did the person whose testamentary capacity is questioned, have, at the time of making his will, such mind and memory as enabled him to understand the business in which he was then engaged, and the effect of the disposition made by him of his property. If he did, he was possessed of the sound mind and memory required by the statute; and all degrees of impairment of the mental faculties, or dementia, whether senile or produced by other causes, which destroy this testamentary capacity, will disqualify, whether it has reached the stage of absolute imbecility or not. The inquiry is to be made in view of the circumstances of the particular case, and a determination reached by a consideration of the nature and character of the business performed, under all the attendant conditions and circum-

stances.   In this view, the question of the mental capacity of
the testator to make the writing alleged to be his last will and
testament, should be submitted to the jury.   *Yoe* v. *McCord,*
*supra ; Trish* v. *Newell, supra.*

It is, however, urged, that the doctrine of the instruction is
justified by expressions used in argument in a late case de-
termined in this court.   This is probably true; but upon
examination it will be found that the principle contended for
was wholly unnecessary to the determination then reached.
The case referred to by counsel does not profess to overrule or
modify in the least the rule announced in the many cases pre-
viously decided by this court, and to which we have referred.
It frequently happens that principles unnecessary to the de-
cision of the case are announced, which may be proper in
argument, but which, when embodied in an instruction to a
jury, would be improper or misleading.   We are of opinion,
however, that the instruction under consideration, in the re-
spect indicated, does not announce a correct rule,—and espe-
cially is this so in view of the circumstances of this case,—and
was improperly given.

For the error in this regard, and in excluding the testimony
of witnesses called by contestants, for the reasons before stated,
the decree of the circuit court must be reversed and the cause
remanded, which is done.                    *Decree reversed.*