## MATILDA SCHUBART ET AL.

### V.

## CHICAGO GAS LIGHT & COKE COMPANY ET AL.

*Corporations—Gas Companies—Trust—Monopoly—Exchange of Stock —Fraud—Sales—Pleading.*

1.  To authorize a court of equity to set aside a sale because made upon fraudulent representations, it must appear that the party was not only misled, but misled to his prejudice or injury. Courts of equity do not, any more than courts of law, sit for the purpose of enforcing moral obligations or correcting unconscientious acts which are followed by no loss or damage.

2.  A corporation can not be made liable for loss caused by the false representations of its officers concerning a matter about which they are not shown and can not be presumed, to have had any authority from the corporation to make any representations whatsoever.

3.  A person exchanging gas stock for the certificates of a trust, composed of all the gas companies of a given municipality, with the understanding that such trust was to be a monopoly, is not entitled to the return of such stock, although alleging that the exchange was induced through false representations.

4.  In the case presented, this court holds that the bill in question is multifarious and wanting in equity, and declines to interfere with a decree dismissing the same.

[Opinion filed July 23, 1891.]

APPEAL from the Circuit Court of Cook County; the Hon. RICHARD W. CLIFFORD, Judge, presiding.

Complainants filed their bill setting forth that they are the executors of the will of Henry Schubart under letters issued December 3, 1887; that part of the assets of the estate are 417 shares of stock of the Chicago Gas Trust Co.; that prior to February 16, 1887, Henry Schubart had been the owner of 585 shares of stock of the Chicago Gas Light & Coke Co., upon which date last named its assets were of the value of between five and six million dollars.

That at that time and before, the Chicago Gas Light &

Coke Co., through its officers and directors, conceived the scheme to undervalue the property of the company and its business for the purpose of forming a gas trust company, of which the Gas Light & Coke Co. was to be a member.

The bill then sets forth the sending of certain circulars to the stockholders of the Gas Light & Coke Co., containing statements as to its condition and prospects, which, it is alleged, were false; also letters received by Henry Schubart, sent, it is alleged, by the procurement of the Gas Light & Coke Co., the contents of which are charged to have been untrue; one of said letters contained an offer to Henry Schubart of $42.50 for each $25 share of stock; another contained an offer of $37.50 for each $25 share, and the statement that this is twenty-three per cent more than the actual value of the stock, as shown by the books of the company.

Most of the other statements in the letter, the bill alleges were false, but the truth of the representation as to the actual value of the stock as shown by the books of the company, is not controverted.

Henry Schubart appears from the bill to have written several letters to the Gas Light & Coke Co., and one to the Gas Trust Co., and to have met the secretary of the last named company, but the bill fails to show what he wrote, or what he learned at his interview with the secretary of the Gas Trust Co.; the bill also fails to set forth the circular mentioned in the letter of the Gas Trust Co. to him, under date of June 11, 1887, the proposition contained in which circular he seems to have accepted and acted on.

Among other communications received by Henry Schubart, were the following: .

"THE EQUITABLE GAS LIGHT & FUEL COMPANY, OF CHICAGO.
"30 BROAD STREET, NEW YORK, May 3d, 1878.

"The directors of the Equitable Gas Light and Fuel Company of Chicago, beg leave to lay before the stockholders the following plan of settlement of the affairs of the company.

"A company has been formed by leading capitalists of Philadelphia, Chicago and New York, called the Gas Trust Company of Chicago. The stockholders having a majority of the shares of all the other gas companies of Chicago, have

Schubart v. Chicago Gas Light & Coke Co.

sold their holdings for paid up shares in the Gas Trust Company at the following rate for the whole capital stock of each company.

"For stock of Consumers' Gas Company, 19,710 shares.

"For stock of Chicago Gas Light and Coke Company, 142,790 shares.

"Set aside for Equitable Gas Light & Fuel Company, 37,500 shares.

"For stock of People's Gas Light and Coke Company, 40,000 shares.

"The Gas Trust Company will control the whole gas business of Chicago, and will operate all the companies with economy and profit. The directors of your company have declared a dividend of the 20,000 shares of Gas Trust Company stock, received for the 20,000 shares of stock of the company lately owned in the People's Company, at the rate of 66⅔ per cent to each share of your company's stock, payable at the Central Trust Company, New York, on May 21, 1887, and at the same time they recommend to the stockholders of your company to sell their shares of stock for paid up shares in the Gas Trust Company on the terms above mentioned, by which each share of Equitable Gas Light and Fuel Company stock will receive of Gas Trust Company stock 1¼ shares, to wit, 1.25, and for dividend as above, 66⅔, total for each share of Equitable Company stock in Gas Trust Company stock, 1.91⅔. Careful experts estimate that the latter stock from the beginning will earn four per cent per annum. Your company's bonds will be a first charge on the company's property, and next on the earnings of the Gas Trust Company before it pays dividends. The working capital of all the companies will be at the beginning about $1,000,000 cash. The surplus assets of your company remain in the treasury, and are your contribution to that sum. The Central Trust Company will receive your stock and give you scrip for it, and for your dividend until the gas company is ready to deliver engraved certificates for the same.

(Signed)    "HENRY FITZHUGH,
"E. J. JERZMANOWSKI,
"WILLIAM H. GEBHARD."

Schubart also received through the office of the Gas Trust Company the following letter:

"CHICAGO, June 11th, 1887.

"HENRY SCHUBART,
      160 Water street, New York.

"*Dear Sir:* I enclose you a circular in which this company offers to exchange its stock for your 585 shares of the Chicago Gas Light and Coke Company's stock, at the rate of $71.35 for each share of your Chicago G. L. & C. Co. stock. In other words, the company offers you 285 per cent for your old stock, payable in the stock of the Trust Company—almost three shares for one. This is at the rate mentioned in the circular of the Equitable Gas Company, which you showed me when I was in New York.

"Yours truly,

"F. P. ADDICKS, Secretary."

And also the following:

"PRESIDENT'S OFFICE, CHICAGO GAS TRUST COMPANY.

CHICAGO, June 23d, 1887.

"Mr. HENRY SCHUBART,
      160 Water street, New York City.

"*Dear Sir:* Your favor of the 20th inst. to hand, and contents noted. I, this day, delivered to the Illinois Bank, the correspondent of your bank here in Chicago, certificates for 417 shares and a fractional certificate for thirty-nine hundred and seventy-five ten thousandths of a share, in exchange for the 585 shares of the Chicago Gas Light & Coke Company's stock, delivered by them for your account. I neglected to state in my circular that the company will buy such fractional shares as this at sixty per cent. If you, therefore, will indorse this certificate for the fraction, and return to me, I will forward you a draft for the amount.

"In regard to the $2,000 of income bonds of the Consumers' Gas Company, they are being redeemed, par for par, in the stock of the Chicago Gas Trust Company. If you will forward them to the Union National Bank, Chicago, they will give receipts for the same, which will entitle you to the stock of the Chicago Gas Trust Company as soon as the engraved

certificates are ready. The same bank is also redeeming the new stock of the Consumers' Gas Company at $65.70 per share, payable in the Chicago Gas Trust Company's stock. They will issue their receipt for this stock in the same way as for the income bonds, to be replaced by the regular engraved certificates of this company as soon as they are finished.

"I would also state that the printed stock forwarded you for your Chicago Gas Light & Coke Company stock will be replaced by the engraved certificates as soon as finished, and arrangements will be made so that it can be taken in New York, and save you the trouble of forwarding the certificates to this city again. The thirty shares of the Consumers' Gas Fuel & Light Company stock which you still hold, had really no value. The option to exchange it for the income bonds has long since expired, but if you will forward me the thirty shares, I think I can get you the same for it in Chicago Gas Trust Company stock as if you had availed yourself of the option to exchange it for the income bonds; that is, you would have gotten $300 income bonds for the thirty shares. I will try and get you the same amount of the Chicago Gas Trust Company's stock for it.

"Yours truly,

"F. P. ADDICKS, Sec."

The bill further states that the stock in the Chicago Gas Trust Co. is illegal stock, and that the company is organized for the purpose only of controlling a majority of the stocks of the various gas companies doing business in the city of Chicago and vicinity, which said gas companies are still being operated by their own officers, but only nominally.

That in accordance with the arrangement to exchange said Henry Schubart's Gas Light & Coke Co. stock for Gas Trust Co. stock, he delivered to the Gas Light & Coke Co., or some of its agents, 585 shares of its stock, and received from it, or some of its agents, 417 shares of Gas Trust certificates and a fractional certificate for thirty-nine hundred and seventy-five ten-thousandths of a share, which exchange complainants insist was on the part of the Gas Light & Coke Co., its agents and officers, fraudulent, and that complainants are entitled to have

said 585 shares of stock delivered up to them upon the surrender of said Gas Trust certificates, and for that purpose complainants have canceled said exchange and have tendered to said Gas Light & Coke Co. and its agents, 417 shares of Gas Trust Co. stock, and demanded the return of said 585 shares of stock, which demand was refused, and the complainants charge that the Gas Light & Coke Co., or some of its agents or confederates connected with the Gas Trust Co., have now the said 585 shares of stock in their possession, but which of the confederates is so possessed, complainants are not advised, and they make various persons parties defendant, for the purpose of seeking discovery as to the whereabouts of said stock. The bill also alleges that on the 30th of March, 1887, there was passed and placed upon the records of the Gas Light & Coke Co. a resolution that the executive committee thereof be empowered to prepare a form of first mortgage bonds, to be issued by said corporation, and that said corporation, its officers and directors, then contemplated the making of a mortgage for $10,000,000, to be placed upon its property, whereby to raise money to buy the outstanding stock of said corporation, and to make said company a part of said Gas Trust.

The bill also charges that one E. J. A. Matthews, S. A. Kent, and others, about the time when they solicited said Schubart to sell his stock, purchased and secured the control of a large majority of the capital stock of said Gas Light & Coke Co., for the sole purpose of controlling the same for the unlawful and fraudulent object of making it a part of said Gas Trust Co., and for the purpose of placing a mortgage of $10,000,000 upon the property of said company, and to distribute the bonds secured by said mortgage among the stockholders of said company, to reimburse them for moneys which they had theretofore paid out in the purchase of a majority of the capital stock of said Gas Light & Coke Co. and other gas companies in Chicago, and for the purpose of controlling the whole gas business of Chicago, and to run it as a monopoly under the designation of Gas Trust.

The bill further sets forth that such mortgage has been executed and bonds distributed; that in the month of April,

said Sidney A. Kent, with certain other persons, acquired the ownership and control of a majority of the stock of the Gas Light & Coke Co. and three other gas companies in Chicago, for the purpose of controlling the business of the Gas Light & Coke Co. in Chicago, and creating a monopoly, and that they thereupon formed a corporation known as the Chicago Gas Trust Co., and that the officers and directors of the Gas Light & Coke Co. permitted the Gas Trust Co. to practically control the business of the Gas Light & Coke Co., as was fully admitted by the president of the Gas Trust Co., Kent, in his letter to said Henry Schubart, of June 7, 1887; that as complainants are informed and believe, the said Gas Trust Co. is not such a company as was contemplated under the laws of the State of Illinois, and that upon a proper proceeding being brought by the attorney-general of said State, its charter may be taken from it, and its franchises forfeited; that the actual value of the assets of the Gas Light & Coke Co. do not exceed $6,500,000, and that if the deed of trust for $10,000,000, be allowed to remain outstanding as a lien upon the property of the company, and the bonds secured thereby are actually issued to *bona fide* holders for value, the interests of complainants as stockholders will suffer irreparable loss and injury, and their stock be of no value whatever; that the execution of said deed of trust and the issuing of the bonds secured thereby, with the fraudulent purpose of dividing the proceeds among the parties and buying up the controlling interests of all other gas companies in Chicago, and the consenting to a formation of the Gas Trust Co. for the purpose of controlling said Gas Light & Coke Co. and all other gas companies in Chicago, has in fact endangered the existence of said Gas Light & Coke Co. and given to the State of Illinois a proper warrant for its legal dissolution.

The bill prays for a discovery from all parties without oath; for an injunction against the disposal of bonds; from permitting the Gas Trust Co. to operate as a monopoly of the other gas companies in the city of Chicago; and for a return to complainants of the 585 shares of stock of the Gas Light & Coke Co. exchanged by Henry Schubart, or, if that is not

possible, for a surrender to him of 585 shares of unsold stock now in the possession of said Gas Light & Coke Co.

The bill also prays for general relief and for an injunction.

The bill was demurred to as being multifarious and also as devoid of equity; and the demurrers were sustained and the bill dismissed.

Messrs. MOSES & PAM, for appellants.

Messrs. GOUDY, GREEN & GOUDY and COHRS & GREEN, for appellees.

WATERMAN, J.    The bill is in the first instance for a rescission of the contract made by Henry Schubart with the Gas Trust Co.    The Gas Light & Coke Co. is made a party upon the allegation that it conspired to bring about the contract of exchange and made fraudulent representations to induce it.

If the Gas Light & Coke Co. is responsible for the false representations, and they were material, and such as Schubart had a right to, and did rely on, and if he was in consequence thereof defrauded, that is, suffered actual pecuniary damage, as it has never had the stock and never pretended to buy it or exchange for it, the remedy of complainants against it for these false representations would seem to be by way of an action on the case and not in a court of equity.

We have been referred to no authority holding that a corporation can be made liable for loss caused by the false representations of its officers concerning a matter which the officers are not shown to have had, and can not be presumed to have had, any authority from the corporation to make any representations or bargains whatsoever.

Henry Schubart knew that it was no part of the business of the Chicago Gas Light & Coke Co. to advise or aid him in exchanging his stock with the Gas Trust Co., or selling it to Brown Brothers, or anybody else; that its officers in expressing their opinion as to what the prospects of the company and the gas business were, and what he had better do, could be but giving utterance to their own views; that as a company the corporation had neither information nor opinion upon those

Schubart v. Chicago Gas Light & Coke Co.

matters, because to have and to express opinions upon such subjects was utterly foreign to the purpose of its existence.

If all the officers of the corporation had affixed their official signatures to a document giving information as to, and expressing an opinion upon, the value of a mortgage he was about to sell to a third party, and he had thereby been defrauded, the company would not have been liable for his loss, because the giving of such information and opinions is no part of the business of such a company; the individuals who made such false statements, quite likely, would be personally liable, and the individuals who by untruthful utterances misled Mr. Schubart, may have to respond in damages, but not the corporation for whom they presumed to act.

True, if the Chicago Gas Light & Coke Co. had, by means of false representations, received and now had this stock, it might be compelled to return it; or if it had received and since parted with the stock, it might be compelled to pay its value, not because the representations were its, but because one can not retain property which he has knowingly obtained through the fraud of another.

It does not appear that complainants' testator, Henry Schubart, was injured by the fraud said to have been practiced upon him. It is nowhere alleged that the Gas Trust certificates received by him were or are of any less value than the stock by him exchanged therefor, or that the income or profit therefrom is or has been any less than the increase of the stock would have been. The bill is in this regard in the nature of an action *quia timet.*

Complainants set forth fears they have that the stock of the Chicago Gas Light & Coke Co., which was exchanged, may become worthless, and its impairment by an illegal mortgage placed upon the property of that company is apprehended; they also declare that the franchises of the Gas Trust whose stock they hold, may be forfeited by action of the State, and they set forth that the formation of the Gas Trust Co., and other acts of the defendants, have created a dissatisfaction in the public mind, which will likely lead to the establishment of other gas companies in Chicago, and that the acts of the directors of the Gas Light & Coke Co. have been highly

detrimental to the interests of complainants, but in what way or to what extent is not shown, nor whether such acts were done before or after the exchange of the stock of complainants' testator.

To authorize a court of equity to set aside a sale because made upon fraudulent representations, it must appear that the party was not only misled, but misled to his prejudice or injury; for courts of equity do not, any more than courts of law, sit for the purpose of enforcing moral obligations, or correcting unconscientious acts which are followed by no loss or damage. Story's Eq. Juris., Sec. 203; Rogers v. Higgins, 57 Ill. 244; Bartlett v. Blaine, 83 Ill. 25; Marsh v. Cook, 32 N. J. Eq. 262.

Complainants' testator voluntarily exchanged his stock for Gas Trust Co. certificates, with the understanding that the Gas Trust Co. was to be a monopoly, and he is presumed to have had the same knowledge of the illegality of the purposes of the Gas Trust that the complainants now charge. The bill seeks to have returned property knowingly devoted to an unlawful enterprise. The bill charges that by false representations was the testator induced to make the exchange, but it is nowhere alleged he unwittingly contributed to the creation of a company organized for the purpose of establishing a monopoly.

Proceeding upon the theory that the complainants are entitled to have the stock of the Gas Light & Coke Co., once owned by Henry Schubart, or a like amount of other stock of that company, transferred to them, complainants ask that the mortgage on the property of that company be set aside, its present managers and officers be enjoined from carrying on its business, and from permitting the Gas Trust Co. to be operated as a monopoly with the other gas companies of Chicago, and that a receiver of the Gas Light & Coke Co. be appointed.

Upon consideration of the second part of the bill, the question arises as to whether its joinder with the first part does not make the bill multifarious.

The second part may with propriety be termed the conditional part, because the allegations thereof and the relief

thereunder, are entirely conditioned upon the success of the complainants as to the first part.

This conditional relief is for the benefit of all the stockholders of the Gas Light & Coke Co., that is, for the benefit of the company itself; and the litigation in this regard is of such a nature that the court might, with great propriety, if the complainants succeeded in establishing their claim, require the Gas Light & Coke Co. to pay the complainants' necessary expenses in the suit, because such expenditures were entirely for its benefit, and in no sense peculiar to the complainants; but the first part of the bill is a matter in which other stockholders have no interest whatsoever.

As to the first branch of the bill, the Gas Light & Coke Co. is a defendant in name and interest; as to the second part, however named, it is in interest a complainant.

The bill also asks that if bonds have been sold to *bona fide* purchasers, the officers who have received unlawful dividends thereof be decreed to pay the same to a receiver for the benefit of the corporation, and makes various persons as officers of the Gas Trust Co. and other gas companies defendants. Some of these persons are not shown to have had any connection with the exchange by Henry Schubart of his stock, and can not properly be joined as parties in a proceeding to set aside such exchange.

Whether or not, for acts said to be *ultra vires*, a stockholder may bring an action against the corporation without setting forth that it is for the benefit of all such stockholders as see fit to come in, it would seem that a bill of that nature ought not to be such that no other stockholder can join in its prosecution.

In Attorney-General v. St. John's College, 7 Simons, 241, the test applied to determine whether a bill was multifarious, was whether one defense could be made to the whole of it. Manifestly one defense can not be made to this bill.

The bill appears to us to be multifarious and wanting in equity. Burnett v. Lester, 53 Ill. 325; Winsor v. Bailey, 55 N. H. 218; Story's Eq. Pleadings, Sec. 271–275.

The decree of the court below will therefore be affirmed.

*Decree affirmed.*