JOHN H. WHIPPLE, Exr.

114:37 LRA271n
40 LRA 262

*v.*

IDA H. EDDY.

*Filed at Ottawa March 28, 1896.*

1. APPEALS AND ERRORS—*effect of failing to stand by overruled demurrer.* The overruling of a demurrer in the form of exceptions to a bill, on account of matters not proper to be included therein, is not ground for reversal, where the defendant answered the bill and agreed as to the issues on which the trial was had.

2. TRIAL—*jury may be waived in contest of will.* A jury may be waived in a will contest, under the statute giving chancery courts jurisdiction of such contests, (Rev. Stat. 1874, chap. 148, sec. 7,) although the statute says they "shall" be tried by jury, as that word has no greater force than the word "may."

3. WILLS—*spiritual delusions not connected with will do not render it invalid.* The mere delusion of a testator that he is guided by spirits of the dead through mediums does not defeat his competency to make a will, when there is nothing to show that the subject of spiritualism enters his mind in connection with the will.

APPEAL from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

ROBERT VAN SANDS, for appellant:

The court, without a jury, had no jurisdiction of the subject matter of the issue, notwithstanding the consent of the parties. Jurisdiction over the subject matter can not be given by consent. 12 Am. & Eng. Ency. of Law, 301; *Leigh* v. *Mason,* 1 Scam. 249; *Foley* v. *People,* Breese, 31; *Peak* v. *People,* 71 Ill. 278; *Fleischman* v. *Walker,* 91 id. 318; *Hoagland* v. *Creed,* 81 id. 506; *Cobb* v. *People,* 84 id. 511; *Fahs* v. *Darling,* 82 id. 142; *Bishop* v. *Nelson,* 83 id. 601.

The power to entertain bills to contest wills is not embraced among the general equity powers of a court of chancery. *Luther* v. *Luther,* 122 Ill. 558; *Myatt* v. *Walker,* 44 id. 485; *Sinnet* v. *Bowman,* 151 id. 146; *Brown* v. *Miner,* 128 id. 148; *Meeker* v. *Meeker,* 75 id. 260.

The statute (as to jury trial) is substantially a transcript of the Kentucky statute, which was taken from

the Virginia act of 1785.   *Well's will*, 5 Litt. 273; *Luther* v. *Luther*, 122 Ill. 558; *Riggs* v. *Wilton*, 13 Ill. 15.

The Virginia statute was construed in *Coulter* v. *Bryan*, 1 Gratt. 18.

The courts of this State will apply to this statute the same construction given it by the courts of Kentucky and Virginia.   *Riggs* v. *Wilton*, 13 Ill. 15.

The chancellor has no direct power over the subject of the proceeding, but it is to the jury that the power of deciding the question of will or no will, and of thus determining the character of the contested writing, is committed.   *Singleton* v. *Singleton*, 7 B. Mon. 344.

The will is proper and natural.   Of itself it is strong evidence of the testator's capacity.   *Young* v. *Barner*, 27 Gratt. 96; *Anderson* v. *Irwin*, 101 Ill. 411; 25 Am. & Eng. Ency. of Law, 1005, note 1.

·Where a will is wise and natural in its provisions, it is in itself strong evidence that it was made in a lucid interval, and therefore valid.   Schouler on Wills, sec. 78; 25 Am. & Eng. Ency. of Law, 979, note 3; Swinburne on Wills, pt. 2, sec. 3, pl. 14; *Cartwright* v. *Cartwright*, 1 Ph. 90; Williams on Executors, (Perkin's Am. ed.) 361, note.

Letters of the testator, written about the time or after the will was made, are strong proof of his mental capacity, and are admissible in evidence on that issue.   *Foster* v. *Dickerson*, 64 Vt. 233; *McMinch* v. *McMinch*, 2 Rich. (S. C.) 229; *Blakeley's will*, 48 Wis. 294; *Vance* v. *Upson*, 66 Tex. 476; 25 Am. & Eng. Ency. of Law, 1006, note 1.

SYDNEY STEIN, (of counsel,) also for appellant.

WING, BARGE & LEACH, for appellee:

The court had jurisdiction of the person and of the subject matter, and the judgment was valid, the error or irregularity of proceeding without a jury having been waived by the parties.   *Railway Co.* v. *Hock*, 118 Ill. 587.

The law will not allow appellant to complain that it was error to permit him to waive his rights.   *Heacock* v.

*Hosmer,* 109 Ill. 245; *Burgwin* v. *Babcock,* 11 id. 28; *Phillips* v. *Hood,* 85 id. 450; *Henrichsen* v. *Mudd,* 33 id. 476; Proffatt on Jury Trial, sec. 110.

When a party suffers the case to be tried by the court until the issues are found against him, he waives any right he may have had to a jury trial. Proffatt on Jury Trial, sec. 112; *Ellithorpe* v. *Buck,* 17 Ohio St. 72.

Where there is an irreconcilable conflict in the testimony, this court will not reverse the judgment of the trial court if the evidence of the successful party, when considered by itself, is sufficient to sustain the verdict. *Calvert* v. *Carpenter,* 96 Ill. 63; *Bible Society* v. *Price,* 115 id. 623; *Moyer* v. *Swygart,* 125 id. 262.

Mr. JUSTICE WILKIN delivered the opinion of the court:

This is a bill in chancery to contest the last will of Ira B. Eddy, under section 7, chapter 148, of the Revised Statutes, wherein appellee is complainant, and appellant, as executor of the alleged will, is defendant, upon the ground of mental incapacity and undue influence. It contains many allegations foreign to the issue, and seems to seek to put in question the conduct of the executor in the management of the estate, as well as the validity of the will. For this reason a demurrer in the form of exceptions was filed to it by the defendant, and overruled, whereupon he answered.

It appears from the record, as is recited in the decree, that on June 6, 1895, the cause being reached for trial, the parties, in person and by their respective solicitors, "then and there expressly waived the trial by jury of the issues raised by the pleadings: First, was the writing referred to the last will and testament of said Eddy or not; second, was Eddy, at the time of the execution of said writing, of sound mind and memory; and third, was Eddy, at the time of the execution of said writing, unduly influenced in the execution thereof by John H. Whipple; and requested the court to hear the evidence and determine

the issues without the intervention of a jury, whereupon the court ordered said stipulation and agreement waiving a trial by jury of said issues to be entered of record, and assented to the request of the parties that the court, without the intervention of a jury, should try said issues." The court found the issue as to the mental condition of the testator in favor of complainant, but that he was not unduly influenced.

The will, in substance, provides for the debts and funeral expenses of the testator, and bequeaths to his executor all the remainder of his estate, real and personal, to be sold, and the proceeds thereof, after payment of expenses of sale, to be paid over to Ida Helen Eddy, his adopted daughter, upon her arriving at the age of twenty-one. It nominates the defendant executor and trustee, waiving security on his bond as executor and requiring no bond as trustee. It provides that the executor shall pay such reasonable amount for the education and support of the daughter until she becomes twenty-one years of age, from the annual income of his estate, as in his judgment and discretion shall seem right and proper.

The greater part, if not all, of the property owned by the testator at his death was realty. The complainant below claims in her bill to be the lawfully adopted daughter of Ira B. Eddy, and, as such, his sole heir. As the law would give her, as such heir, all his estate, the only question with her is, whether she shall take under the law or under the will. The issue as to undue influence having been decided in favor of the defendant, the only question on the merits of the case before us is, was the testator "of sound mind and memory" at the time he executed the paper purporting to be his will. Before considering it, two preliminary assignments of error will be briefly noticed.

It is insisted the court below erred in overruling the demurrer (called exceptions) to the bill. If the defendant had stood by his demurrer there would be force in his

position on this assignment of error, but having answered, and especially having agreed that the hearing should be had upon issues as to mental incapacity and undue influence, the objection that the bill set up matters not proper in the contest of a will cannot now be urged. Certainly no injury is shown to have resulted to appellant from any such improper averment.

It is next contended that the circuit court was without jurisdiction to try the issues formed, without a jury. To the reply that a jury was expressly waived by agreement of the parties, it is said jurisdiction cannot be given by consent. This is a misapplication of the rule invoked. Section 7, *supra*, confers jurisdiction upon courts of chancery to hear bills to contest wills. It was said in *Wolf* v. *Bollinger*, 62 Ill. 368, that the statute gave a court of chancery authority to adjudge upon the validity of any part of an instrument as well as the whole, and when there was no dispute of fact, and parties proceeded to trial without objection and without asking that an issue at law be made up and tried by a jury, that was a waiver of the making up and trial by the jury of such issue. The provision as to how the trial shall be had in no way affects the jurisdiction of the court. The question raised is more properly whether a jury may be waived by the parties when "an issue at law is made up whether the writing produced be the will of the testator or testatrix." It is true, the language of the statute is, "which shall be tried by a jury," etc.; but the word "shall," as here used, has no other or greater force than the word "may." If a jury can be waived in such a case, it was clearly done here by a stipulation in writing entered of record.

Counsel has cited decisions from the Supreme Court of Kentucky, Virginia and other States upon statutes of which ours is a substantial copy, and it is insisted that they decide that the trial must be by jury. These decisions go no further than our own, so far as we can discover. All agree that the statute contemplates a trial

by jury, and that the court could not dispense with the jury without the consent of all parties interested; but we do not understand any of the cases cited as holding that a jury may not be waived as in any other civil case, and we think the result of our decisions is that it can. The verdict of a jury in the contest of a will has the same effect, and the power of a court to set it aside and grant a new trial is the same, as in actions at law. (*Meeker* v. *Meeker*, 75 Ill. 260; *Calvert* v. *Carpenter*, 96 id. 63; *Shevalier* v. *Seager*, 121 id. 564.) The court having the ultimate right to determine whether the issue has been decided in accordance with the evidence, no good reason can be shown why the parties may not, with the consent of the court, submit such issue to it in the first place, if they see proper so to do. Of course, the verdict of the jury is only to be set aside when it is manifestly against the weight of the evidence, but the court alone has the power to say when it is so. There was no error in the hearing of the case without a jury.

Recurring now to the principal question,—that is, the mental condition of Ira B. Eddy when he made his will,— and giving to the finding of the chancellor the same force and effect which should be given a verdict in an action at law, should the decree below be sustained? There is but little, if any, conflict in the testimony of the several witnesses in so far as they describe the mental condition of the man. The disagreement is in the opinions expressed by them as to his capacity to transact ordinary business. All agree that from about 1853 he was a strong believer in spiritualism, and on that subject was fanatical. He believed that in his business transactions and social affairs he could receive directions from the spirits of the dead through "mediums." This led him to say and do many foolish things, and to live with different women without being married to them. This was notably true in the case of Caroline E. McGua, with whom he lived, calling her his wife, from 1874 until she died. She pro-

fessed to be a spiritual medium and fortune teller, and undoubtedly controlled his actions, to a great degree, by impressing him with the belief that she received information and directions from the spirit world. Soon after they assumed the marriage relation she impressed him with the idea that as a result of their illicit intercourse a second Saviour would be born, and he often expressed the belief that he would become the father of the coming Christ. This silly delusion was, however, abandoned prior to the adoption of complainant, Ida H. Eddy, November 3, 1876, but he continued to be controlled, to a greater or less extent, by this woman to the date of her death, January 7, 1890. During her lifetime he deeded all his real estate to her. Afterwards she conveyed an undivided half of it back to him, and still later they each conveyed one-half to one Joseph P. Ellicott, who held the title when she died. These conveyances were no doubt made under the delusion that they were in conformity with the wishes and directions of spirits, but after the woman's death he set about procuring a reconveyance of the property, and shortly prior to the execution of this will it was deeded to him by Ellicott. Connected with this transaction, and expressive of his solicitude for the care of his adopted daughter, the complainant, he wrote several letters which appear in the record. In one of these, addressed to the husband of Mrs. McGua, on the subject of his claim to dower in the land, among other things, he says: "The law is plain on this subject, and we will conform to it. Why should we have another three years' lawsuit for the benefit of lawyers? Please call upon me, without any fear of hard words. We are both old men, not long to stay on earth. The woman is dead, and we soon will be. Let there be peace between us. Why quarrel? I was deceived as much as you was in the whole trouble she gave us. Your now friend, Ira B. Eddy." This letter, as well as declarations made by him, shows that after he ceased to be

under the immediate influence of his so-called wife he lost all confidence in her. His letters seem to show an intelligent purpose to secure his property to his adopted daughter, whom he regarded as his only heir, in a way that would be most beneficial, as he thought, to her. The evidence of the defendant, and of each of the subscribing witnesses to the will, is clear, direct and positive as to his being of sound mind and memory when he signed it, and they are corroborated by others. On the contrary, witnesses called by complainant, basing their opinions upon his extreme and unreasonable belief in spiritualism, gave it as their opinion that he was insane and not capable of making a will. No witnesses, so far as we are able to discover, testified that he was of unsound mind and memory, except as he was controlled by the delusion that he was guided by spirits. His nephew, Bayard E. Hand, who knew him longer than any other witness, introduced on behalf of complainant herself, we think intelligently describes his mental condition at the date of his will in the following language:

Q. "Now, state to the jury whether he was sane or insane, in your opinion, at the time of those occurrences that you have been speaking of.

A. "In my opinion his mind was clear as yours or mine, but that he was subject to certain influences and certain ideas. In my opinion the man was crazy. Well, I don't mean by that he was at all what you might call a crazy loon on the street, but I think he was a man of very good judgment in his own ideas, but at the same time he was influenced in certain channels that would imply an unbalanced mind,—so far as that influence was concerned, only.

The court: "That is, he was crazy on certain subjects only?

A. "Yes, only. He was a smart business man,—the best in a family of six or seven children, more or less."

He was evidently a most wretched and unhappy old man. After the death of Mrs. McGua, and some months after making his will, he attempted to take his own life, and it is claimed that he did finally commit suicide. The question, however, is, did he possess testamentary capacity January 29, 1890? In *Trish* v. *Newell*, 62 Ill. 196, in laying down the rule as to the mental capacity requisite to making a valid will, the language of Jarman in his treatise, as to the manner of stating the question, was adopted, as follows: "Were his mind and memory sufficiently sound to enable him to know and understand the business in which he was engaged at the time he executed the will?" And it was said (p. 205): "This is the best form in which the question can be submitted to a jury, with this addition: that in determining the question the competency of the mind should be judged of by the nature of the act to be done,—from a consideration of all the circumstances of the case."

We have often held that a person who is capable of transacting the ordinary business affairs of life is capable of making a will. (See cases collected and cited in *Campbell* v. *Campbell*, 130 Ill. 466.) The fact that a person is affected with insanity, or labors under some delusion, believes in witchcraft, clairvoyance, spiritual influences, presentiments of the occurrence of future events, dreams, mind reading, etc., will not affect the validity of his will on the ground of insanity. (1 Redfield on Wills, 79, note 9; *Chaffee will case*, 32 Wis. 557; *In re Smith*, 52 id. 543; *Brown* v. *Ward*, 53 Md. 423.) Manifestly, a man's belief can never be made a test of sanity. When we leave the domain of knowledge and enter upon the field of belief, the range is limitless, extending from the highest degree of rationality to the wildest dream of superstition, and no standard of mental soundness can be based on one belief rather than another. What to one man is a reasonable belief is to another wholly unreasonable, and while it is true that belief in what we generally understand to be supernat-

ural things may tend to prove insanity under certain circumstances, it is a well known fact that many of the clearest and brightest intellects have sincerely and honestly believed in spiritualism, mind reading, etc.

We entertain no doubt, from the evidence in this record, that when Ira B. Eddy signed the will in question he knew perfectly well and fully understood what he was doing. He was aware of what property he owned, the natural object of his bounty, and for days prior to the making of the will he manifested an intelligent anxiety for her future welfare. She was then a child of less than fifteen years of age. What she might be and under what influences she might be brought when she reached the age of eighteen he could not know, and it was perfectly reasonable that he should provide that she should not receive the property until arriving at the age of twenty-one. The record is barren of proof even tending to show that the subject of spiritualism ever entered his mind in connection with his will. According to all the proof he was no more insane on the 29th day of January, 1890, when he made his will giving appellee all his property, than he was on November 3, 1876, when by his act and consent she was adopted as his daughter and made his heir-at-law. It required no more mental capacity to make her his legatee by will than it did to make her his adopted child. In our opinion he was fully capable of doing both.

We think the facts of the case, applied to the law, do not sustain the decree of the circuit court, and it will therefore be reversed and the cause remanded, with directions to dismiss the bill at complainant's cost.

*Reversed and remanded.*