HARRIET A. FREEMAN *et al.*

*v.*

ADELLA EASLY *et al.*

*Filed at Mt. Vernon June 12, 1886.*

1. WILL—*right of disposition of property.* A party having the capacity to make a will may dispose of his property as he sees fit, and he may bestow his bounty where he wishes, either upon his heirs or others; and if he makes an unequal disposition among his heirs, it is wholly immaterial whether he has any reasons therefor or not.

2. SAME—*disposing capacity—degree of mental impairment to disqualify the testator.* In a case where the evidence as to a person's capacity to make a will was conflicting, the court instructed the jury: If they should believe, from the evidence, that at the time of the execution of the instrument, the validity of which was in question, by the testator, he was so diseased, mentally, as not to be of sound mind, their verdict should be for the complainants, the contestants: *Held,* that the instruction was erroneous, as it stated the rule too broadly.

3. A person may be so diseased, mentally, as not to be of sound mind, and yet possess a disposing mind, which is the mental capacity to know and understand what disposition he may wish to make of his property and upon whom he will bestow his bounty.

4. A person who is capable of transacting ordinary business is also capable of making a valid will. The derangement or imbecility, to incapacitate a person from making a will, must be of that character which renders him incapable of understanding the effects and consequences of his acts. If a party is capable of acting rationally in the ordinary affairs of life, so that he may comprehend what disposition he may wish to make of his property, and be able to select the objects of his bounty, that is all that is required to make a will.

5. WITNESS—*credibility—swearing falsely.* An instruction that if any witness has sworn falsely on any point material to the issues, the jury may disregard all his testimony unless corroborated by other unimpeached testimony, is bad, as omitting the important qualification that the witness must have willfully or knowingly sworn falsely. Such an instruction, even when most accurately formulated, is of doubtful propriety.

6. SAME—*competency as against persons suing or defending as heirs.* A bill to contest a will was brought by two minor heirs of the testator, by their next friend; but they becoming of age, the next friend, on motion, was dismissed out of the case, and on the trial of the issue was called and testified as a witness, he having no interest in the result: *Held,* that he was a competent witness.

| | |
|---|---|
| 117 | 317 |
| 121 | 384 |
| 117 | 317 |
| 126 | 137 |
| 126 | 523 |
| 117 | 317 |
| 130 | 479 |
| 117 | 317 |
| 145 | 274 |
| 117 | 317 |
| 147 | 378 |
| 148 | 45 |
| 117 | 317 |
| 54a | 166 |
| 117 | 317 |
| 180 | 24 |
| 117 | 317 |
| 181 | 405 |
| 117 | 317 |
| 183 | 274 |
| 117 | 317 |
| 184 | 225 |
| 117 | 317 |
| 201 | 201 |

7. On bill by a part of the heirs of a deceased person, against his executor, widow, and the other heirs, to set aside the ancestor's will for want of sufficient capacity, the widow of the deceased is not a competent witness against the complainants suing as heirs.

8. EXECUTION—*against an executor.* It is improper, on a bill to contest a will filed by a part of the heirs against the executor and other heirs, to decree costs against the executor and award execution to collect the same.

9. PARTIES—*bill to contest a will.* On bill to contest a will, all parties interested in the estate should be made parties, either complainants or defendants.

APPEAL from the Circuit Court of Jackson county; the Hon. OLIVER A. HARKER, Judge, presiding.

Messrs. HILL & MARTIN, for the appellants:

In the seventh instruction the court told the jury, that if they believed, from the evidence, that the testator was so diseased, mentally, as not to be of sound mind when he signed his will, then their verdict should be for the complainants. This is not a proper proof of testamentary capacity. A person's mind may be greatly impaired,—may be unsound to a considerable extent,—yet so long as he retains mind enough to understand and reasonably transact ordinary business affairs, he has sufficient mental capacity to make a valid will and dispose of his property. *Meeker* v. *Meeker*, 75 Ill. 260; *Rutherford* v. *Morris*, 77 id. 397; *Carpenter* v. *Calvert*, 83 id. 62; *Brown* v. *Riggin*, 94 id. 560; *Roe* v. *Taylor*, 45 id. 485; *Lindsey* v. *Lindsey*, 50 id. 79.

This instruction did not present the law correctly, and was misleading in the extreme, especially in view of Dr. Nutting's testimony that there is no time when a person is diseased of body that he can be said to be sound mentally.

All persons who have any substantial, beneficial or legal interest in the subject matter in litigation, and who will be materially affected by the decree, must be made parties. *Moore* v. *Munn*, 69 Ill. 591; *Atkins* v. *Billings*, 72 id. 597; *Hopkins* v. *Roseclare Lead Co.* id. 373; *Brown* v. *Riggin*, 94 id. 560.

The judgment for costs against the executor, and awarding execution against him, was error. *Pingree* v. *Jones*, 80 Ill. 177.

The admission of the testimony of the father and next friend of the infant complainants was error. The disqualification extends to all persons who have any interest in the result of the suit, if it be only a liability to pay costs. Section 7, chapter 51, of the Revised Statutes, provides that no person who is incompetent shall be rendered competent by any release or re-assignment of his interest; hence the withdrawal from the suit as a party did not render W. J. Easly competent.

The court erred in excluding the deposition of Harriet A. Freeman, widow of the testator. Not being called to testify in behalf of her own interest, she was competent, independent of the statute. *Kimball* v. *Cook*, 1 Gilm. 423; *Stokes* v. *Kane*, 4 Scam. 167; *Muchmore* v. *Jeffrey*, 25 Ill. 199; *Bradshaw* v. *Combs*, 102 id. 428; *Smith* v. *West*, 103 id. 332.

Mr. W. J. ALLEN, Mr. J. M. FREELS, and Messrs. SMITH & STEPHENS, for the appellees, after stating the facts, discussed the evidence and its bearings at some length, their argument being principally upon the facts.

Mr. CHIEF JUSTICE SCOTT delivered the opinion of the Court:

On the 22d day of March, 1880, John D. Freeman made and published what purports to be his last will and testament, and afterwards, on the 5th day of April, in the same year, he departed this life. The will was executed with the usual formalities, and was admitted to probate in Jackson county, where the testator had lately resided. On the 28th of October, 1880, the bill in this case was filed, in the circuit court of Jackson county, by a part of the heirs of the testator, against the executor named in the bill, the widow, and a portion of the other heirs who are named as devisees, to set

aside the will, on the ground the testator, at the time of making and executing the same, was not of sound and disposing mind, and that he was wholly incapable of making a valid will. An answer filed by defendants, and the replication thereto, put the matters and things alleged in the bill at issue, and thereupon the court directed an issue at law to be made up, whether the writing referred to in the pleadings, and purporting to be the last will and testament of John D. Freeman, was his last will and testament or not. Although the bill in this case was exhibited at the December term, 1880, of the circuit court, the cause was continued from term to term, and no trial was had until the March term, 1884, of that court. The cause was then submitted to a jury upon the evidence introduced, but as they were unable to agree upon a verdict, they were discharged from the further consideration of the matters submitted to them. No other trial was had until on the 6th day of February, 1886, when the case was again submitted to a jury, who, after hearing the evidence, found by their verdict, "the instrument in question not to be the last will and testament of John D. Freeman," and thereupon the court ordered, adjudged and decreed that the instrument in writing purporting to be the last will and testament of John D. Freeman, deceased, and the probate thereof, be set aside and declared null and void. From that decree the defendants bring the case to this court on appeal.

Without expressing any opinion as to the weight of the testimony touching the testamentary capacity of the testator at the time of making the instrument alleged to be his last will and testament, it is thought that in view of the conflicting character of the evidence the present decree must be reversed on account of the seventh instruction of the series given by the court on behalf of complainants. It is as follows:

"If you should believe, from the evidence, that at the time of the execution of the instrument (the validity of which is in question,) by J. D. Freeman, he was so diseased, mentally,

as not to be of sound mind, then your verdict should be for complainants."

Obviously this charge does not state the law accurately, and in view of what may be fairly said of the unsatisfactory character of the evidence, it must have been hurtful to the defence. No doubt it is true a party may be so diseased, mentally, as not to be of sound mind, and yet he might possess what the law terms a "disposing mind," that is, the mental capacity to know and understand what disposition he may wish to make of his property, and upon whom he will bestow his bounty. It is a rule of law that a person who is capable of transacting ordinary business is also capable of making a valid will. In *Meeker* v. *Meeker*, 75 Ill. 260, it was held by this court, the derangement or imbecility to incapacitate the person from making a valid will must be of that character which renders him incapable of understanding the effect and consequences of his acts. A test usually recognized is, the party must be capable of acting rationally in the ordinary affairs of life, so that he may comprehend what disposition he may wish to make of his property, and be able to select the subjects of his bounty. Nothing more is required, and so the authorities in this State uniformly hold. (*Meeker* v. *Meeker* *supra; Rutherford* v. *Morris*, 77 Ill. 397, and subsequent cases that follow the doctrine of the cases cited.) Medical testimony in this record is to the effect that in all cases of diseases of the body, the mind is in some degree affected, and the party might be said to be of "unsound mind," and still be capable of transacting ordinary business, such as is done in daily life. In this case the testator suffered greatly from severe bodily disease, and no doubt his mind was affected to a degree it might be, at least in a partial sense, unsound; but the jury should not, for that reason alone, be told, as a matter of law, that would incapacitate him to make a valid will. That would be to state the rule of law on this subject broader than the authorities in this and other States will warrant.

21—117 ILL.

It is conceded by counsel this instruction may be faulty, but it is insisted, when considered in connection with other charges given upon this branch of the case which state the law with more accuracy, it was not calculated to mislead the jury. This may or may not be so. It accords with common observation that in contests concerning wills, where the testator has made, or has seemingly made, an unequal or inequitable disposition of his property among those occupying the same relation to him, by consanguinity or otherwise, there is a disposition in most minds to seek for a cause for holding the will invalid. The inclination in this direction that is found to exist in the minds of most, if not all, jurors, can not always be controlled by instructing them there is no law requiring a testator, nor is he bound, to devise his property equitably or in equal proportions among his heirs. Of course, the law is he may make such disposition of his property as he sees fit, and he may bestow his bounty where he wishes, either upon his heirs or others. While this is undoubtedly the law, the common mind is disinclined to recognize it, and jurors will too frequently seize upon any pretext for finding a verdict in accordance with what they regard as natural justice. In this case it appears the testator did make an unequal disposition of his estate among his heirs. He may have had the best of reasons for so doing, and it may have been both just and equitable. But whether he had, or had not, that is not a matter for inquiry. If he had sufficient testamentary capacity, he might dispose of property in any way not forbidden by law or public policy. As before remarked, it is difficult to get jurors to recognize this abstract principle of law. It may be the jury in this case seized upon this charge given them by the court, to enable them to find a verdict in accordance with their own sense of justice, rather than the law as it is. If so, the instruction was most hurtful to the defence, and it was error to give it.

The fifth instruction of the series is also faulty. By it the jury were told, if "any witness has sworn falsely on any point material to the issues," they might disregard all his testimony, unless corroborated by other unimpeached testimony. It omits the qualification the witness must have *willfully* or *knowingly* sworn falsely. Even the most candid witness might make a false statement on a point material to the issues, and unless willfully or corruptly done, it ought not to disparage his other testimony. Such an instruction, even when most accurately formulated, is of doubtful propriety, and certainly it should never be given unless most accurately worded, to prevent misapprehension.

It may be well to notice a few objections discussed on the present record that may arise on another trial, if one shall be had. At the time the bill was filed, two of complainants were minors, and they commenced the suit in their own behalf, in the name of their father, W. J. Easly, as their next friend. Afterwards, on the 11th day of January, 1886, proof was made that each of these complainants had attained their majority, and the suit as to W. J. Easly, the next friend, by order of court, was dismissed. On the next trial of the cause, complainants offered W. J. Easly as a witness on their behalf, and it was objected he was incompetent under the statute, which forbids any party to the record, or in interest, to testify of his own motion, where any adverse party sues or defends as executor, heir, legatee or devisee. The objection is untenable. Since the witness was dismissed from the record it is as though he had never been a party. He never had any interest in the subject matter of the litigation, and if not now a party to the record there is no reason why he is not a competent witness. Section 7, chapter 51, of the Revised Statutes of 1874, can have no application, for the reason the witness had no interest to be released.

It is also insisted the trial court erred in excluding the deposition of Harriet A. Freeman, widow of the testator. In

this ruling of the court there was no error. She was a party to the record, in interest, and therefore, under the statute, was not a competent witness in a case like the one being considered, where complainants sue as heirs.

It seems the decree rendered, inadvertently adjudged costs against the executor and awarded execution for the collection of the same. It needs no suggestion from this court that such an order was improper.

If it shall be made to appear, or if it does now appear, that other parties interested in the estate are not parties to the suit, either as complainants or defendants, it would be well that such persons be made defendants before another trial shall be had.

The decree of the circuit court will be reversed and the cause remanded.

*Decree reversed.*