CARL NIEMAN *et al.*

*v.*

WILHELMINA SCHNITKER.

*Opinion filed October 16, 1899.*

1. EVIDENCE—*former similar wills are admissible on contest on question of sanity.* Former wills, made when the testator's sanity was not questioned, which dispose of the testator's property in substantially the same way as the contested will, are competent evidence on the question of testamentary capacity; and proof of the testator's sanity when executing such former wills is also competent.

2. INSTRUCTIONS—*instruction as to the weight of testimony is erroneous.* An instruction which impliedly suggests to the jury that some other witness had a better opportunity of observing the deceased than the subscribing witnesses to a will, and that his testimony is entitled to greater weight, invades the province of the jury.

3. WILLS—*partial unsoundness of mind does not necessarily destroy testamentary capacity.* Feebleness or partial unsoundness of mind does not deprive a person of testamentary capacity, if he knows and understands what disposition he desires to make of his property and upon whom he will bestow his bounty.

4. SAME—*instructions on question of insanity should be based on the evidence.* An instruction that if the will offered for probate was made under the influence of partial insanity it is invalid is misleading, in the absence of any evidence upon which to found it.

5. SAME—*instruction in will contest held to be erroneous.* On a will contest an instruction that a testator may have upon some subjects, and even generally, mind, memory and sense to know and comprehend ordinary transactions, and yet be of unsound mind upon the subject of those who would naturally be the objects of his bounty and of what would be *a reasonable and proper disposition* of his property as to them, is erroneous.

APPEAL from the Circuit Court of Washington county; the Hon. B. R. BURROUGHS, Judge, presiding.

JAMES A. WATTS, for appellants.

CHARLES T. MOORE, F. P. TSCHARNER, and F. M. VERNOR, for appellee.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

The will of Henry Nieman was admitted to probate in the county court of Washington county on the 6th day of August, 1898, and on the 28th day of September, 1898, this bill was filed to contest the validity of the will, on the sole ground, as alleged in the bill, of want of testamentary capacity.

The evidence shows that on May 24, 1898, the testator made his will, which was duly witnessed by Prof. Fassbender and Fred Hoffman, who testified that at the time of the execution he was of sound and disposing mind. The evidence shows that the town assessor called on him the same day, and the testator made his personal property schedule,—*i. e.*, the schedule of his individual property and of property held by him as guardian,—giving a description and statement of the property from recollection. Some twelve witnesses who saw the testator before and after this will was signed, within a short time

181—26

of that event, and who had known him for a number of years, testified to having conversations with him and of observing his manner and condition, and their evidence tends to show that he was of sound and disposing mind. On the 29th day of May he took the sacrament, and the preacher who administered the sacrament testified that he would not take part in that religious ordinance with one not of sound mind; that he conversed with the testator for the purpose of learning of his condition of mind, and states that in his opinion he was of sound mind. Another witness testifies that ten days before the execution of the will the testator stated that he intended to will the appellants here just what he did give to them. Six or seven witnesses called by the contestant, among them the attending physician, testify that about the time of the execution of the will they had conversations with and observed the condition of the testator, and that in their opinion he was not of sound mind. Others called by the contestant, who shortly prior and shortly after the execution of the will conversed with the testator, testify that at times he knew and at other times he did not know of what he was speaking. Other witnesses were called both by proponents and contestant, who testified to certain acts and conversations with the testator, both prior and subsequent to the execution of the will, but expressed no opinion as to the soundness or unsoundness of his mind. Without expressing any opinion as to the weight of evidence in this case, it is sufficient to say that the evidence is sharply conflicting.

The testator, at the time of his death, on June 19, 1898, was about seventy-nine years of age. He had made three or more wills,—one of date August 17, 1897, one of date April 23, 1898, and the one sought to be contested, May 24, 1898. The two former wills were offered in evidence and were objected to by the contestant and the objections were sustained, to which the proponents excepted. Numerous instructions were submitted to the jury on

behalf of contestant and proponents, to which, respectively, exceptions were taken. The jury found that the instrument purporting to be the last will of Henry Nieman was not his last will and testament, and the court entered a decree accordingly. Error is assigned to the admission and exclusion of evidence, in giving and refusing instructions, in entering the decree and overruling the motion for a new trial, etc.

From what appears in this record we are compelled to reverse this decree, and inasmuch as the case must go before another jury we refrain from expressing any opinion on the evidence and as to which side has a preponderance.

The declarations and statements of a testator, made, both or either, before or after the execution of his will, may be proved for the purpose of showing his mental condition at the time of the execution of the will. (*Craig v. Southard*, 148 Ill. 37; *Petefish* v. *Becker*, 176 id. 448; *Hill v. Bahrns*, 158 id. 314; *Taylor* v. *Pegram*, 151 id. 106.) And where the testator has made previous wills, his declarations and statements made about the time of the execution of those former wills, upon the subject of or manner in which he had therein disposed of his property, have been held to be competent evidence. (*Taylor* v. *Pegram*, *supra*.) Where a previous will has been made at a time when the soundness of mind of the testator is unquestioned, and the disposition of property as made by such previous will is approximately the same as made by a will sought to be contested on the ground of unsoundness of mind, such previous will so approximately disposing of property when such soundness of mind is unquestioned is the strongest character of evidence to show a condition of soundness of mind at the time the contested will was made. The wills sought to be offered in evidence, objections to which were sustained by the court, approximately disposed of the property of the testator in the same way as the contested will, and the declarations of

the testator made prior to the execution of the contested will show a purposed change of the will for the correction of minor errors and mistakes appearing in the will. Such former wills are a stronger character of evidence than the mere declarations and statements of a testator, made at about the time of their execution, as to their contents and as to their purpose, depending on the mere recollection of witnesses. The condition of mind of the testator at the time of making such former wills might be properly proved, and when such evidence shows him to have been of sound mind at that time, and where there has been but slight change in the disposition of his property under the former wills and under the contested will, such former wills furnish exceedingly strong evidence of the mental soundness of the testator at the time of the execution of the contested will. Proof of the mental soundness of the testator at the time of the execution of such former wills was competent evidence, as were also the wills themselves. The court erred in excluding testimony as to the mental soundness of the testator at the time of the execution of such former will, and in excluding the wills themselves.

The first instruction given for the contestant was to the effect that the mere fact that a person is a subscribing witness to a will does not entitle his opinion as to the competency of the testator to execute the same, to any more weight than the opinion of any other witness equally credible and intelligent and with equal opportunities of judging, and "his testimony may not be entitled to as much weight as that of some other witness who had better opportunities of observing the deceased at or about the time the will was executed." There is nothing in the record showing that any other witness than the subscribing witnesses was present at the time of the execution of the will, nor is there evidence showing there were other witnesses who had better opportunities of observing the deceased at that time. The question

of the weight of the testimony of the witnesses is a question to be determined by the jury, and their province should not be invaded by the court, as is done by this instruction, where it is stated that the testimony of the subscribing witnesses is not entitled to as much weight as that of some other witness who had better opportunities of observing the deceased. Whether there were any other witnesses who had better opportunities of observing the deceased, and the weight of their testimony, were both questions for the jury and not for the court, and this instruction impliedly suggests to the jury that some other witness or witnesses had better opportunity of observing the deceased than the subscribing witnesses. It was error to give this instruction. *Brown* v. *Riggin*, 94 Ill. 560.

It was error to give the fourth instruction for contestant, which is as follows:

"Unsoundness of mind embraces every species of mental incapacity, from raging mania to that delicate and extreme feebleness of mind which approaches near and degenerates into unconsciousness."

The mind of a testator may be affected in a degree and may be in a partial sense unsound, but, as a matter of law, that alone would not incapacitate him from making a valid will if he yet possesses the capacity to know and understand what disposition he will make of his property and upon whom he will bestow his bounty. (*Freeman* v. *Easly*, 117 Ill. 317.) The instruction as given would take away from a testator who is feeble from sickness but who possesses capacity to know and understand what disposition he desires to make of his property, the right to do so as a matter of law, if every species of mental incapacity, from raging mania to delicate and extreme feebleness of mind which approaches near to and degenerates into unconsciousness, constitutes want of testamentary capacity. The instruction ignores the extent of the unsoundness of mind, because, in effect, it states "every species of mental incapacity" is embraced

in the term "unsoundness of mind." This states the rule of law broader than warranted by the authorities of this State. It was error to give this instruction.

The fifth instruction given for the contestant was as follows:

"The law recognizes the difference between general and partial insanity, and if the jury believe, from the evidence, that the will offered was made under the influence of partial insanity and is the product of it, it is as invalid as if made under the effects of insanity ever so general."

There was no evidence in the record tending to show that there existed any delusion in the mind of the testator as to any particular matter or a mania on any particular subject. The evidence can only be considered as presenting the question as to whether the condition of mind was occasioned by senility or softening of the brain. The instruction suggests what was not suggested by the evidence,—that the will offered was made under the influence of partial insanity,—and in this respect the instruction was misleading. As held in *Chambers* v. *People*, 105 Ill. 409 (on p. 418): "The fact that the court assumes to state the law applicable to particular states of case is of itself an assumption that those states of case exist, for it is not to be presumed a court would give the law to a jury while trying a case, with reference to questions not believed to be before them." In the absence of evidence as to any delusion or mania there was no basis on which the jury could find that the will was made under the evidence of partial insanity, and it was error to give this instruction.

The seventh instruction given for the contestant is as follows:

"That a person may have upon some subjects, and even generally, mind and memory and sense to know and comprehend ordinary transactions, and yet upon the subject of those who would naturally be the objects of his care

and bounty, and of a reasonable and proper disposition as to them of his estate, he may be of unsound mind."

It is not the province of the jury to determine whether the will is a just, wise and proper disposition of the testator's property. (*Carpenter* v. *Calvert*, 83 Ill. 62.) In *Freeman* v. *Easly*, *supra*, this court said (p. 321): "In this case the testator suffered greatly from severe bodily disease, and no doubt his mind was affected to a degree it might be, at least in a partial sense, unsound; but the jury should not, for that reason alone, be told, as a matter of law, that would incapacitate him to make a valid will. That would be to state the rule of law on this subject broader than the authorities in this and other States will warrant. * * * It accords with common observation that in contests concerning wills, where the testator has made, or has seemingly made, an unequal or inequitable disposition of his property among those occupying the same relation to him, by consanguinity or otherwise, there is a disposition in most minds to seek for a cause for holding the will invalid. The inclination in this direction that is found to exist in the minds of most, if not all, jurors, cannot always be controlled by instructing them there is no law requiring a testator, nor is he bound, to devise his property equitably or in equal proportions among his heirs. Of course, the law is he may make such disposition of his property as he sees fit, and he may bestow his bounty where he wishes, either upon his heirs or others. While this is undoubtedly the law, the common mind is disinclined to recognize it, and jurors will too frequently seize upon any pretext for finding a verdict in accordance with what they regard as natural justice." This instruction is much more vicious than the one to which the foregoing language was applied, and is, of itself, sufficient on which to base a reversal of this case.

For the errors indicated the judgment must be reversed and the cause remanded.

*Reversed and remanded.*