William Healea, Appellee, vs. Arthur J. Keenan, Exr., Appellant.

Opinion filed April 21, 1910.

1. Wills—*when instruction that testator must know that will disposes of property as he intended is not improper.* Where the will involves no difficult·question of legal construction, it is not error to give an instruction that the testator must have had sufficient mind and memory to deliberate and determine for himself upon giving the property as disposed of by the will, and also to intelligently know and understand, from the contents of the will, whether it disposes of the property as determined upon.

2. Same—*jury may be instructed that they may consider provisions of will itself.* The intrinsic evidence of the will itself, arising from the unreasonableness or injustice of its provisions, taking into view the state of the testator's property, family and the claims of particular individuals, is competent and proper for the consideration of the jury upon the question of the testator's mental capacity, and it is proper to instruct the jury that they may consider the provisions of the will itself, with the other evidence, in determining that question.

3. Same—*when giving instruction having no basis will not reverse.* An instruction authorizing the jury to find that the will in question is not the will of the testator, even though they believe he had sufficient capacity to transact ordinary business affairs, if they believe he was not of sound mind with regard to the subjects connected with the testamentary disposition of his property and the natural objects of his bounty, should not be given if it has no basis in the evidence, but it is harmless where the jury finds specially that he did not have capacity to transact ordinary business.

4. Same—*the known financial condition of objects of testator's bounty may be considered.* Evidence as to the financial condition of persons having claims upon the testator's bounty, if such condition was known to the testator, may be taken into consideration, in connection with the will itself, in determining the question of testamentary capacity; but such evidence should be limited to the purpose for which it is admissible.

5. Same—*declarations of the testator are not evidence of their truth.* Verbal declarations of the testator to the effect that his son managed the testator's business in the country and that another person managed it in town are admissible as bearing upon the testator's mental condition; but though such declarations are

not evidence of their truth, it is not necessarily reversible error to refuse to so instruct the jury.

6. SAME—*when it is not error to refuse to allow scrivener to testify whether he followed directions.*  Where the person who wrote the will in contest testifies as to what his instructions from the testator were, it is not error to allow him to testify that he wrote the will in accordance with such directions, as the will itself shows what he wrote.

7. SAME—*witness cannot be asked whether he did not transact ordinary business with the testator.*  Where witnesses upon the question of the testator's mental capacity are required to state fully what transactions they had with the testator, it is not error to refuse to require them to state whether they did not transact ordinary business with the testator and why they did so.

8. INSTRUCTIONS—*what instructions for defendants in a will case are objectionable.*  Instructions asked by the defendants in a will case are misleading and objectionable which isolate some one fact and tell the jury that such fact is not sufficient to overthrow the will.

9. SAME—*party cannot complain of refusal of instruction if a more favorable one is given.*  A party cannot complain, on appeal, of the refusal of an instruction if another one upon the same subject is given at his request which is more favorable to him than the one refused.

APPEAL from the Circuit Court of McLean county; the Hon. COLOSTIN D. MYERS, Judge, presiding.

WESLEY M. OWEN, and BARRY & MORRISSEY, for appellant.

CHARLES M. PEIRCE, WILLIAM K. BRACKEN, and MILES K. YOUNG, for appellee.

Per CURIAM: Edward Healea died April 12, 1907, having on September 22, 1906, executed a writing purporting to be his will, which was admitted to probate in the county court of McLean county.  William Healea, his son, filed a bill to have this probate and the will set aside on the ground of the mental incapacity of his father, his intoxi-

cation at the time it was executed, and the undue influence of the appellant, Arthur J. Keenan, who was nominated executor of the will. There have been three trials of the case, two of which resulted in a disagreement of the jury. On the third trial the court instructed the jury that there was no evidence of undue influence. The jury returned a verdict finding that the instrument in question was not the will of Edward Healea, and finding, in answer to special interrogatories, that at the time of its execution Edward Healea did not have sufficient mind and memory to know and understand that he was making a will and the disposition he was making of his property, and did not have mind and memory to understand and transact the ordinary business affairs of life. After overruling a motion for a new trial the court entered a decree in accordance with the prayer of the bill, and the executor appealed.

When the writing in controversy was executed Edward Healea was in his seventy-eighth year. He had been a widower for about twenty years. He had three sons, who were his only heirs,—George, fifty-nine years old, John, fifty-seven, and William, forty-seven. George had five children, John eight and William none. The will, after providing for the payment of his debts and funeral expenses and for the erection of a monument costing not more than $250 at his grave, directed the payment by the executor, as soon as he had sufficient funds, of $1000 to each of his sons and to Roy Thompson, $500 to his granddaughter, Amy Craig, and $300 to each of his other grandchildren. He then directed that his executor, for the period of ten years after his death, should rent all of his real estate and loan the rent received and the residue of the personal estate, and that at the end of that period the personal estate, rents and interest should be equally divided among his sons and his grand-daughter, Amy Craig, if she was then living and a widow, if not, then among the sons, and in the event of the death of any before the expiration of

the ten-year period then all was to go to the survivor or survivors. The real estate is devised, after the ten-year period, to his three sons equally, but in case of the death of any before the expiration of that period, then to the survivor or survivors. A wish is expressed that the sons shall not resort to law in the division of the real estate but will agree among themselves on the division.

Edward Healea came to McLean county between fifty and sixty years ago and from that time until his death lived in the vicinity of Leroy. He had very little property at that time but afterward became the owner of a farm of one hundred and sixty acres, on which he thereafter lived until his death. He subsequently purchased another farm of one hundred and twenty acres, and at the time of his death his estate was of the value of about $60,000, consisting of these two farms and of about $17,000 in personal property, mostly money loaned. No reason appears for doubting his mental capacity until two or three years before his death. In January, 1905, he had an attack of pneumonia and in January, 1906, an attack of grip. The physician who attended him during these illnesses testified that he continued to treat him after the first attack and that during all the time he was gradually failing, the effect of his debility and a heart trouble which he had. Many witnesses testified on either side as to his mental condition during the last two years of his life. Many of the opinions expressed on either side are entitled to little weight, because the facts testified to on which they are based seem to be insufficient as the foundation for an opinion of any special value. There is, however, testimony as to the circumstances under which the will was made; the conduct and transactions of the deceased; his loss of memory of business transactions and of his neighbors and acquaintances; his irrational fear of being compelled by poverty to go to the poor-house; his family relations; his frequent crying upon slight provocation, and other circumstances

from which opinions favorable or unfavorable to his soundness of mind might be formed. It would answer no good purpose to review the evidence in detail. It presented a question, which was proper to submit to the jury, as to whether the deceased was of sufficient mental capacity to make a will. The credibility of the witnesses and the weight of the testimony were questions for determination by the jury. In *Piper* v. *Andricks,* 209 Ill. 564, the court said: "A large number of witnesses were called who testified they were of the opinion the testator had testamentary capacity, while an equal or greater number testified in their opinion he had not. The jury heard these witnesses testify, and it was pre-eminently within their power to determine which were the more worthy of belief. The trial judge also saw and heard the witnesses and approved of the verdict of the jury. In that state of a record this court will not disturb the verdict unless it is manifestly against the weight of the evidence, which is not the case here.—*Bradley* v. *Palmer,* 193 Ill. 15." See, also, *Calvert* v. *Carpenter,* 96 Ill. 63; *Petefish* v. *Becker,* 176 id. 448; *French* v. *French,* 215 id. 470; *Harp* v. *Parr,* 168 id. 459; *Moyer* v. *Swygart,* 125 id. 262; *Long* v. *Long,* 107 id. 210.

Complaint is made of instructions given and refused. The first instruction given on behalf of appellee told the jury that sound mind or capacity to make a will meant sufficient mind and memory to deliberate and determine for one's self upon giving the property as it is disposed of by the alleged will, and also to intelligently know and understand, from the contents of the will, whether it disposed of the property as determined upon. The objection made to it is that it requires too high a standard of mental capacity, and that under it a man might be of perfectly sound mind and yet not capable of making a will if he could not pass intelligently upon the legal effect of the instrument. The cases of *Trish* v. *Newell,* 62 Ill. 196, and *Yoe* v. *McCord,* 74 id. 33, are cited, in the former of which it is said

that it is not necessary that a testator should comprehend the provisions of his will in their legal form but it is sufficient if he understands the elements of which it is composed,—the disposition of his property in its simple form; and in the latter, that the question is, had the testator, as *compos mentis,* the capacity to make a will?—not had he the capacity to make the will produced. Referring to the latter case, it is said in *Dillman* v. *McDanel,* 222 Ill. 276, that this view had not been followed in the later authorities where the question of sanity is involved, and that the business in which a supposed testator is engaged at the time of making his will is that of disposing of his property by the instrument which is attacked, and it is manifest that he could not understand that business unless he had sufficient mental capacity to understand the effect of that particular instrument upon his property. *Trish* v. *Newell, supra,* states the doctrine that a man may not be competent to make a will of one kind, owing to the nature and extent of the estate, when he may be competent to make one less complicated. The same rule is declared in *Campbell* v. *Campbell,* 130 Ill. 466, *Same* v. *Same,* 138 id. 612, and *Taylor* v. *Pegram,* 151 id. 106. No difficult question of legal construction is involved in the instrument in controversy here, and the instruction, as applied to this case and this estate, is not erroneous. The same reasoning disposes of the objection to appellee's third, fourth and eighth instructions.

The second and sixth instructions are objected to because they told the jury that they might, and should, take into consideration the provisions of the will itself in determining whether or not the testator was of sound mind and memory. The intrinsic evidence of the will itself, arising from the unreasonableness or injustice of its provisions, taking into view the state of the testator's property, family and the claims of particular individuals, is competent and proper for the consideration of the jury.

·(*McCommon* v. *McCommon*, 151 Ill. 428; *Dowie* v. *Sutton*, 227 id. 183; *French* v. *French*, 215 id. 470; *Dillman* v. *McDanel, supra.*) If it was proper for the consideration of the jury it was proper for the court to inform the jury that they should consider it, together with all other evidence in the case.

The fifth instruction, which was the same, in substance, as the eleventh, was as follows:

"Even though you may believe, from the evidence, that Edward Healea had sufficient capacity to attend to the ordinary business affairs of life, yet that with regard to subjects connected with the testamentary disposition and distribution of his property and the natural objects of his bounty he was not of sound and disposing mind and memory, and that because of such condition he was unable, at the time of the execution of his alleged will, rationally to comprehend the nature and effect of the provisions of the will, then you should find that it is not the will of the said Edward Healea."

There was no allegation and no evidence that Edward Healea was under any delusion or had any lack of mental capacity with regard to subjects connected with the testa-. mentary disposition and distribution of his property other than a general mental incapacity. There was no basis for these instructions and they should not have been given. (*Nieman* v. *Schnitker*, 181 Ill. 400.) However, as the jury specially found that Edward Healea did not have sufficient mind and memory to transact the ordinary business affairs of life the instructions cannot be said to have been injurious to appellant.

Complaint is made of the ninth instruction because, it is said, it is aimed at the testimony of Leslie Owen. It does not purport to be so aimed. It is a general instruction as to the right of the jury to disregard the testimony of any witness who has willfully sworn falsely as to any material matter unless corroborated. It was for the jury

to say to what witness or witnesses, if any, it applied, and it was not improperly given.

The first, second and third of appellant's refused instructions were misleading and objectionable because each isolates a fact and tells the jury that such fact is not sufficient to overthrow the will. (*Weston* v. *Teufel*, 213 Ill. 291.) All that was material in the fourth refused is contained in the eighth given instruction. The fifth refused instruction is substantially contained in the first and second given; the sixth refused, in the eighth and thirteenth given, and the ninth refused, in the seventh given. The seventh refused instruction stated that if Edward Healea was mentally capable of understanding and transacting the ordinary business affairs of life he was capable of making a will. Appellant has no cause to complain of its refusal, because his ninth given instruction told the jury that the law did not require a man to be capable of transacting the ordinary business affairs of life before he can make a will, but that it is sufficient if at the time he executes the will he knows and understands what disposition he is making of his property. The instruction given was more favorable to appellant than that refused. Appellant's eighth refused instruction should have been given. It is as follows:

"Even if one or more witnesses testified that Edward Healea said that his son John was attending to his business on the farm and that A. J. Keenan was attending to his business in town, yet you are instructed that under the law the testimony of such witnesses in that regard is no proof whatever that they were doing so or that he was not attending to it himself."

Appellant introduced a number of witnesses who testified to having had transactions with the deceased on his farm, such as buying and selling grain and stock and other matters relating to deceased's farming operations. Appellee offered to prove that testator's son John, for the last few years of the deceased's life, managed the farm for him, but

the court sustained objections to this testimony. Some evidence was admitted that the testator had said his son John was managing his business on the farm and Mr. Keenan (the man he appointed executor of his will) was managing his business in town. The court held the testimony offered to show that John Healea was managing his father's business on the farm immaterial and incompetent but the declarations of the testator were admitted, evidently as bearing on the question of his mental capacity. The instruction was correct, but we do not think its refusal so prejudicial in character as to require or justify a reversal of the decree. The court ruled during the trial, and announced in the presence of the jury, that proof that John Healea was managing the farm before his father's death was immaterial and incompetent, from which the jury must be presumed to have understood the court as' holding that the fact as to whether John Healea managed the farm was not to be considered. A great deal of proof was introduced by appellant of acts done and business transacted by the testator in connection with the conduct of his business on the farm, for the purpose of showing he did transact the ordinary affairs of business and that he was capable of and did transact them intelligently. No instruction was asked or given on behalf of appellee in any manner directing the attention of the jury to any statement made by the testator as to the management of his business. It seems certain that under this state of the record the failure to instruct the jury that the statements of the testator as to who managed his business were not evidence of their truth, could not have affected the verdict. Declarations, statements and conversations of the testator upon any subject were competent for the purpose of showing mental capacity, but the failure to instruct the jury that they could not consider them as proof of the truth of the matters stated could not justify a reversal of the decree. Some degree of intelligence must be

attributed to the jury, and it seems clear to us, on the state of this record, that the verdict of the jury could not have been affected or influenced by the failure to give instruction No. 8.

.A number of questions are made as to the rulings on the admission of evidence. Mr. Owen, who wrote the will, was not permitted to answer the question whether he wrote it in accordance with Mr. Healea's instructions. This was not error, for he testified what his instructions were and the will shows what he wrote. In the cross-examination of witnesses who expressed opinions that the decedent was not of sound mind and who themselves had some transactions with him, counsel for appellant asked if the witnesses did not transact ordinary business with him and why they did so. Objections were properly sustained to these questions. Counsel were not restricted in their inquiry about everything that occurred between the decedent and the witnesses. Whether a transaction amounted to ordinary business was not to be determined by the opinion of the witness, and the witness' motives were not material. The testator's actions after the death of his wife, eighteen or nineteen years before the supposed will was made, were too remote and testimony in regard thereto should not have been received. The testimony as to the financial condition of his children, if known to him, was not improper, because the known financial condition of those having claims upon a testator's bounty may be taken into consideration, in connection with the will itself, in determining the question of testamentary capacity. *Dowie* v. *Sutton, supra; Dillman* v. *McDanel, supra.*

The decree is affirmed.                *Decree affirmed.*