John McCoy, Appellee, *vs.* Mary Sheehy *et al.*
Appellants.

*Opinion filed December 21, 1911.*

1. Wills—*when testator has sufficient mental capacity to make a will.* Proof that the testator was weakened by disease and his mind, until aroused, partially dormant, does not show that he did not have sufficient mental capacity to make the will, where it is shown that at that time his mind was clear, that he talked an hour with his attorney, telling him the number of acres of land and the amount of personal property he owned, stating how he purchased the land, mentioning his children in the order of their birth as the objects of his bounty, stating how he wanted the property divided between his wife and children, and otherwise exhibiting discriminating judgment.

2. Same—*mere fact that the testator was about to die when he made his will does not invalidate it.* The mere fact that the testator was sick and about to die when he made his will does not invalidate it, and if he has sufficient mental capacity to comprehend the nature and character of his property and the objects of his bounty, and understands the business in which he is engaged, he has sufficient mental capacity to make the will.

Appeal from the Circuit Court of DeWitt county; the Hon. W. G. Cochran, Judge, presiding.

Morris J. Hinchcliff, Herrick & Herrick, and John Fuller, for appellants.

Edward J. Sweeney, for appellee.

Mr. Justice Hand delivered the opinion of the court:

The county court of DeWitt county admitted to probate a paper purporting to be the last will and testament of Michael Sheehy, deceased. Appellants took an appeal to the circuit court of said county, and that court also admitted the will to probate, and a further appeal has been prosecuted to this court.

It appears from the evidence that Michael Sheehy had been suffering from disease for some time and was in an enfeebled condition; that on the 20th day of December, 1910, he was removed from his home in DeWitt county to St. Joseph's Hospital at Bloomington, McLean county, where he died on the first day of January, 1911; that on the morning of the 28th of December he had a sinking spell, and after he had rallied he asked his attending physician as to his condition, and the physician informed him he was in a precarious condition and likely to die soon, and if he had any business to transact he had better attend to it at once. His attorney was telephoned to and arrived on the afternoon train of that day, and after a conference with Sheehy he prepared the will admitted to probate, and the same was executed at about nine o'clock that evening while Sheehy was propped up with pillows in bed. The will gave his property, which consisted of two hundred acres of farming land and personal property, (the personal property consisting of stock, farming machinery, grain, machinery, etc., and being of the value of from $4000 to $5000 and located upon the farm where he and his family

resided,) to his wife and children, and provided the land should not be sold for twelve years, when his youngest child would be of age. The will was in due form and was attested by Nellie Trainor, an attendant at the hospital, and Wesley Davis, a friend of twenty years' standing, who accompanied him to the hospital, as subscribing witnesses.

When the will was presented for probate in the county court objection was made to its probate on the ground that Michael Sheehy did not have sufficient mental capacity to make a will at the time the will was executed. The subscribing witnesses were called at the hearing in the circuit court and they each testified in open court that they were present and saw the testator sign the will and that he asked them to sign it as witnesses to its execution, which they did in the presence of the testator and in the presence of each other, and that at the time of the execution of the will they believed the testator to be of sound mind and memory. It appears from the cross-examination of said witnesses that when Michael Sheehy was brought to the hospital he was brought on a cot; that he was in bed from the time of his arrival until his death; that he was at times stupid and at other times his mind seemed to wander, and that when not aroused he paid but little attention to his surroundings, but when aroused he was rational and fully understood what was going on around him; that on the evening of the execution of the will he talked for nearly an hour with his attorney, in the hearing of the subscribing witnesses and of Mr. McCoy, a friend whom he asked to serve as executor and trustee under his will; that he informed his attorney of the number of acres of land he owned; that it was subject to a mortgage; that he had purchased it at master's sale; that he did not want it sold until his youngest child was of age; that he wanted his family to continue to reside on the farm; that he had from $4000 to $5000 worth of personal property, and told of what it consisted, and named his children in the order in which they were born, and

stated how he wanted his property divided between his wife and children; that when the will was prepared and ready for signature it was read over, paragraph by paragraph, to him, and he said it was all right and as he wanted it, and he then asked Miss Trainor and Mr. Davis to witness it as his will, and asked the attorney to hand him a tablet lying near on a table, on which to place the will while he signed it. It also appears from the testimony of Davis that early in the conversation preparatory to drawing the will he said he owned two hundred acres of land and that one eighty belonged to his brother and sister, but later he said it all belonged to him and he wanted his estate to go to his wife and children. It also appeared that after he had talked with the attorney, and while the attorney was writing the will, he appeared to be stupid, but on again being aroused he asked that the will be read, although he had first suggested its execution be postponed until morning, and that it was then signed and witnessed.

It is stated in the briefs that Michael Sheehy was suffering from pulmonary trouble, and the evidence of the attesting witnesses shows that during his stay at the hospital he was very weak, and he died on Sunday after the will had been executed on Wednesday, but the witnesses both say that he was fully conscious when roused; that he talked freely with his attorney as to his property and stated how he wanted it disposed of, naming the objects of his bounty, and that he fully understood what he was doing at the time he executed the will. If Michael Sheehy had sufficient mental capacity to comprehend the nature and character of his property and the objects of his bounty and understood the business in which he was engaged at the time he executed the will, he had sufficient mental capacity to make the will, and the fact that he was suffering from disease and was about to die at the time he executed the will would not avoid the will. In *Freeman* v. *Easly,* 117 Ill. 317, it was held a person may be so diseased, mentally,

as not to be of sound mind and yet possess a disposing mind, which is the mental capacity to know and understand what disposition he wishes to make of his property and upon whom he wishes to bestow his bounty. In *Campbell v. Campbell,* 130 Ill. 466, on page 477, the rule announced in Buswell on Insanity was quoted with approval, as follows: "To constitute a sound and disposing mind it is not necessary that the mind should be unbroken, unimpaired, unshattered by disease, or otherwise, or that the testator should be in full possession of his reasoning faculties. So if the testator be in a dying state, he has capacity if, when his attention is aroused, his mind acts clearly and with discriminating judgment in respect of the act to be done and its relations." In *Bevelot v. Lestrade,* 153 Ill. 625, it was said, on page 631: "The seventh instruction correctly states that although a testator may be sick at the time of making the will, yet if his mind is sufficiently clear to understand what he is doing he has sufficient capacity to make his will, and that he has sufficient capacity to make a will when in a dying condition, if, when his attention is aroused, his mind acts clearly and with discriminating judgment in respect of the act to be done and its relations."

It is doubtless true that Michael Sheehy, at the time he executed his will, was weakened by disease, and his mind, until aroused, was partially dormant, but the evidence of the subscribing witnesses to his will, who were apparently honest, intelligent and fair-minded persons, shows beyond all question that when his attention was aroused his mind was clear, and that the will was the result of a discriminating judgment exercised by him with respect to the business of making his will.

We are satisfied from the testimony of the subscribing witnesses, taken as a whole, that Michael Sheehy possessed testamentary capacity at the time that he made his will, and the circuit court did not err in admitting the will to probate, and its judgment will be affirmed.

*Judgment affirmed.*